UNITED STATES, Appellee,

v.

Andre DELAND, Captain, U.S.
Army, Appellant.

No. 47722.
CM 442202.

U.S. Court of Military Appeals.

April 28, 1986.

Certiorari Denied Oct. 6, 1986.
See 107 S.Ct. 196.

For Appellant: *Lieutenant Colonel William P. Heaston* (argued); *Colonel William G. Eckhardt, Major Edwin D. Selby, Captain Gunther O. Carrle* (on brief).

For Appellee: *Captain Kathy J.M. Peluso* (argued); *Colonel James Kucera, Captain Thomas E. Booth, Captain Debbie J. O'Bryan* (on brief); *Lieutenant Colonel Adrian J. Gravelle* and *Major Larry D. Williams.*

## Opinion of the Court

EVERETT, Chief Judge:

Captain Deland was tried at Fort Jackson, South Carolina, by a military judge sitting as a general court-martial. Contrary to his pleas, he was convicted of signing a false official document, rape, sodomy, and conduct unbecoming an officer, in violation of Articles 107, 120, 125, and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 920, 925, and 933, respectively. The sentence adjudged—dismissal, confinement for 10 years, and total forfeitures—was approved by the convening authority. Subsequently, the Court of Military Review set aside the findings of guilty as to the false official statements and substituted indecent acts with a child for the sodomy findings. The Court then affirmed the remaining findings but reduced the confinement portion of the sentence to 8 years. 16 M.J. 889, 893 (1983). In its unpublished memorandum opinion on reconsideration, the Court of Military Review conformed the corresponding conduct-unbecoming-an-officer findings to its prior action on the sodomy findings. However, the sentence, as already reassessed, was not changed.

We granted review on this issue assigned by appellate defense counsel:

WHETHER THE MILITARY JUDGE ERRED TO APPELLANT'S PREJUDICE BY PERMITTING THE PROSECUTION PSYCHIATRIST, PURSUANT TO MILITARY RULE OF EVIDENCE 803(4), TO REPEAT STATEMENTS MADE BY THE VICTIM OF A SEXUAL ASSAULT.

Also, the Court specified an issue as to multiplicity of the findings. 17 M.J. 313.

## I

The facts relevant to the assigned issue were succinctly summarized by the Court of Military Review in this manner:

> The appellant was divorced in 1979 and Mrs. Deland was given custody of their three children. The appellant retained visitation rights. The victim of the sex offenses was the appellant's seven-year-old daughter, Stefanie. She testified that while visiting the appellant in July 1980 he inserted his penis into her vagina twice, once while they were locked in the bathroom and again when she was in bed. She also testified that the appellant placed cream on her hands and told her to rub it on his penis, which she did. She further testified that the appellant spooned honey onto her vagina while she was in bed and licked it.
>
> Stefanie's twin sister, Bridget, and an older brother, Erik, corroborated her account of the incident in the bathroom. They testified that the appellant was alone in the bathroom with Stefanie, that Bridget tried to enter the bathroom but could not because the door was locked, that Stefanie was crying when she came out with the appellant, and that the appellant told Stefanie not to tell Bridget what had happened.
>
> In April 1981, while Stefanie's mother was driving Stefanie, Bridget and Erik to visit the appellant she heard Stefanie tell Bridget that "daddy" had inserted his penis into her vagina. Impelled by a desire to ascertain the truth of Stefanie's accusation and concerned about Stefanie's recent antisocial behavior and persistent nightmares, Mrs. Deland took Stefanie to a Doctor Steude, who in turn referred Stefanie to a Doctor Schnackenberg, a child psychiatrist. Doctor Schnackenberg administered several tests to Stefanie, including a sentence completion test in which she was instructed to complete sentences with whatever thoughts came immediately to her mind. Among the thirty-four sentences which Stefanie was asked to complete, she completed three of them as follows (the underscored portion completed by Stefanie):

> I worry about <u>daddy.</u>
>
> I don't like <u>daddy doing these things to me.</u>
>
> Sometimes I think about <u>daddy and me alone.</u>

> When Doctor Schnackenberg questioned Stefanie about her answers, she told him that the appellant had placed his penis in her vagina, asked her to lick and suck his penis, and licked her vagina. The military judge permitted Doctor Schnackenberg to testify over defense objection, ruling that his testimony was admissible under Military Rule of Evidence 803(4).

16 M.J. at 890.

## II

■ Stefanie, the alleged victim, testified at the trial and could be observed by the trier of fact; and so the reception of her extrajudicial statement did not violate appellant's sixth-amendment right of confrontation. *United States v. LeMere*, 22 M.J. 61 (C.M.A.1986); *see California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Therefore, we are concerned only with whether Dr. Schnackenberg's testimony concerning what Stefanie had told him about her father was admissible under Mil.R.Evid. 803(4), which excepts from the hearsay prohibition:

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

The premise of this rule is that a patient seeking diagnosis or treatment from a physician has an incentive to be truthful because he believes that by telling the truth he will facilitate the doctor's task. *See* Drafters' Analysis, App. 18, Manual for Courts-Martial, United States, 1969 (Re-

vised edition); *cf. United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *Shell Oil Company v. Industrial Commission*, 2 Ill.2d 590, 119 N.E.2d 224, 231 (1954); *Meaney v. United States*, 112 F.2d 538 (2d Cir.1940); *United States v. Hill*, 13 M.J. 882 (A.C.M.R.1982). Obviously, then, the patient must have some expectation of benefiting in this way when he makes the statement, if it is to be admitted as evidence.

■ Here, we conclude this requirement was satisfied. We recognize that Mrs. Deland made it clear in her testimony that she had first taken Stefanie to a psychiatrist, Dr. Steude, in order to determine whether some of Stefanie's accusations against appellant were fantasies. However, the key to admissibility is what Stefanie—rather than her mother—had in mind. Stefanie herself testified that she went to see Dr. Schnackenberg because she was having nightmares; and she knew that she was going to talk to the doctor about them. Even though in cross-examination she answered that she also was seeing Dr. Schnackenberg about her father, we believe that her testimony, when considered as a whole, describes a patient who is consulting a physician in order to feel better and who, for this reason, would have an incentive to tell him the truth about matters perceived to be relative to his treatment. For Stefanie the relationship between trying to cure her nightmares—which Stefanie viewed as an unpleasant experience—and talking with a psychiatrist was direct enough to fulfill the purpose of Mil.R.Evid. 803(4).

From the standpoint of Doctor Schnackenberg, the statements were elicited for purposes of medical diagnosis at the time of Stefanie's initial visits to him; and later, for purposes of treatment. They related to "the cause or external source" of Stefanie's symptoms—her nightmares and antisocial behavior. In his testimony, Dr. Schnackenberg made clear that he considered her statements to him to have been "reasonably pertinent to diagnosis or treatment."

■ Deland contends, however, that statements made to a psychiatrist require a different analysis from those made to other medical practitioners. Although no such distinction is apparent in the Rule or discernible from it, *see, e.g., United States v. Lechoco*, 542 F.2d 84, 89 n. 6 (D.C.Cir. 1976); *cf. Goldade v. State*, 674 P.2d 721 (Wyo.1983); *Howe v. State*, 611 P.2d 16 (Alaska 1980); *Parker v. State*, 268 Ark. 441, 597 S.W.2d 586 (1980); 4 J. Weinstein and M. Berger, *Evidence* § 803(4)[01] at 803–131 to 803–132 (1979), appellant insists that a patient talking to a psychiatrist often will be less aware of the need for accuracy than a patient who is describing organic symptoms to a doctor. Indeed, sometimes a psychiatrist will ask a patient to describe his fantasies—which both the doctor and the patient realize have no direct relationship to reality but which may provide the doctor helpful information for diagnosis and cure. Certainly, if statements made by a patient to a psychiatrist are offered under Mil.R.Evid. 803(4), the military judge must determine that the statements were elicited under circumstances which made it apparent to the patient that the psychiatrist desired truthful information and that only by speaking truthfully would he receive the desired benefits from the psychiatric consultation.

In this case, the Government successfully surmounted the obstacles encountered when extrajudicial statements to psychiatrists are being offered in evidence. Dr. Schnackenberg made clear in his testimony that he could determine whether Stefanie was telling him a fable or was reciting her factual observations. As he put it, he could determine what was her "level of psychic functions." Moreover, as we read Stefanie's testimony in the context provided by that of Dr. Schnackenberg and of her mother, she possessed the requisite frame of mind when she told the psychiatrist about being sexually abused. She was trying to give Dr. Schnackenberg information that she thought he was seeking in order to

help cure her nightmares; and, at that time, she did not believe that she was free to tell him fairy tales or describe fantasies.

One of the problems with this type of testimony is that, in establishing admissibility of an extrajudicial statement made to him for purposes of diagnosis or treatment, the psychiatrist may implicitly be vouching for the accuracy of the testimony. To some extent, this was true here because, in establishing a predicate for admission of the testimony, Dr. Schnackenberg made it clear that, at least in some respects, he believed what Stefanie had told him. However, the Government specifically disavowed any attempt to offer Dr. Schnackenberg's opinion about the truth or falsity of Stefanie's statements to him. Furthermore, the trial was by military judge alone; and we assume—especially in light of the Government's disclaimers—that the judge did not in any way rely on any inference he might have drawn as to Dr. Schnackenberg's opinion of Stefanie's credibility.

■ Under similar circumstances, if the trial had been before members, the military judge might well have cautioned the court members that they should draw no inference that the doctor to whom the extrajudicial statements were made had any belief as to the falsity or accuracy of the statement. Moreover, the possibility that an inference will be drawn as to the doctor's opinion concerning the truthfulness of extrajudicial statements made to him is still another factor for a trial judge to consider in deciding in the first instance whether the probative value of the extrajudicial statement "is substantially outweighed by the danger of unfair prejudice" and other considerations. *See* Mil.R.Evid. 403.

■ Appellate defense counsel complains that some of the details of Stefanie's statements—especially the identification of the person who sexually abused her—should have been excluded "as [not] reasonably pertinent to diagnosis or treatment." As they point out, some courts have refused to receive this type of evidence. *Cf. United States v. Iron Thunder*, 714 F.2d 765 (8th Cir.1983); *Roberts v. Hollocher*, 664 F.2d 200 (8th Cir.1981); *United States v. Iron Shell, supra; United States v. Nick*, 604 F.2d 1199 (9th Cir.1979); *United States v. Narciso*, 446 F.Supp. 252 (E.D.Mich.1977); *United States v. Hill, supra.*

In many instances, identity of an assailant may be immaterial to psychiatric diagnosis and treatment of the trauma resulting from the assault. For example, the identity or description of a stranger who rapes a woman may be of little significance from a medical standpoint in treating her. However, where, as here, a close relative is the alleged offender, the situation is different. Dr. Schnackenberg testified specifically that it was important to determine whether Stefanie's sexual activity had been with a "father figure." Because psychiatry—from the days of Sigmund Freud—has emphasized the importance of family relationships in molding attitudes and behavior, Dr. Schnackenberg's testimony seems eminently plausible; and obviously, it was accepted by the military judge as a basis for his ruling.

Of course, because Mil.R.Evid. 803(4) really hinges on the attitude of the declarant, Stefanie's identification of the person who abused her should not be admitted unless she also had considered that this information was being obtained by the doctor in connection with his efforts to do something about her nightmares. However, nothing in the record indicates that she would have believed this information to be less relevant to treatment than the other information she was providing Dr. Schnackenberg. Accordingly, this appears to be one of those unusual cases where medical testimony of a patient's identification of an offender is admissible. *Cf. United States v. Renville*, 779 F.2d 430 (8th Cir.1985); *Goldade v. State, supra.* The defense theory was that, if Stefanie had been sexually molested, this was not done by her father but by another man, Larry Cook, who had a close relationship with Mrs. Deland and a history of child molestation. Thus, appellate defense counsel insists that admission of Stefanie's extrajudicial identification of her father as the offender was especially damaging.

Certainly the theory of defense was a factor for the trial judge to consider in making the determination called for by Mil. R.Evid. 403. However, we do not believe that, because of Deland's theory of defense, Dr. Schnackenberg was limited to testifying that Stefanie had told him that she had been sexually abused by someone whom the doctor would characterize as a "father figure." Instead, under the circumstances of this case, he was entitled to state the specific identity of the person whom Stefanie had named.

It was important for Dr. Schnackenberg to know whether Stefanie had been abused by her father—whom she visited on occasion—or by Larry Cook—who apparently was such a regular visitor in her mother's home that he might have become a "father figure" in Stefanie's eyes. Without ascertaining which one was the offender, Dr. Schnackenberg would not have been in a position to diagnose fully the traumatic effects of the abuse or to treat the victim. Stefanie's identification of her father as having had sexual contact with her describes the "general character of the cause or external source" of her symptoms and was "reasonably pertinent to diagnosis or treatment." *See* Mil.R.Evid. 803(4).

■ Although we uphold admissibility of Stefanie's extrajudicial statement pursuant to Mil.R.Evid. 803(4), several points merit emphasis. First, even though Mil.R.Evid. 803 says that availability of the declarant is immaterial to admissibility pursuant to its exceptions, this pronouncement is not necessarily binding where extrajudicial statements for medical purposes or medical diagnosis or treatment are offered through the doctor as a witness. The Supreme Court has not yet stated that hearsay exceptions are coextensive with exceptions to the right of confrontation.

■ ■ Second, the type of evidence involved here should be received with great caution by a judge. We will not condone

efforts to extend Mil.R.Evid. 803(4) to include the testimony of a psychiatrist whose examination of an alleged victim was more oriented to his testifying at trial than to medical diagnosis or treatment. Moreover, unless the extrajudicial statement by the patient was clearly made with some expectation of receiving medical benefit from the medical diagnosis or treatment that is being sought, it will be inadmissible.

■ Finally, the psychiatrist—as well as any other physician—should not be allowed to assert, expressly or impliedly, that he believes the statement made by his patient. By instructions to court members or otherwise, the military judge should make clear that the doctor is only describing the statement rather than evaluating its credibility.

### III

■ ■ Turning to the specified issue, we conclude that the specifications under Article 133 duplicate those under the other charges. Congress never intended for findings of guilty of the same act or omission to be affirmed under both Article 133 and a specific punitive article, so one or the other must be set aside. *United States v. Timberlake*, 18 M.J. 371 (C.M.A.1984); *United States v. Rodriquez*, 18 M.J. 363 (C.M.A.1984). Accordingly, the findings on the specifications alleging violations of Articles 120 and 134, 10 U.S.C. § 934 must be set aside.* However, we are satisfied that this action does not require relief as to sentence.

### IV

The decision of the United States Army Court of Military Review is reversed as to Charges II and III and their specifications; the findings of guilty thereon are set aside; and those Charges and their specifications are dismissed. In all other respects, the decision below is affirmed.

Judge COX concurs.

---

\* Judge Cox believes that it is more descriptive of the misconduct to affirm the Article 133 convictions and set aside the convictions under the specific punitive Articles. *See* his concurring opinion in *United States v. Scott*, 21 M.J. 345, 350 (C.M.A.1986). In view of his preference in this regard, and because I believe the reviewing authority is free to affirm either—but not both—of the multiplicious findings, we have chosen to affirm the findings under Article 133, Uniform Code of Military Justice, 10 U.S.C. § 933.