**UNITED STATES, Appellee,**

v.

**Specialist Five Bobby R. QUICK, 250–98–6928, United States Army, Appellant.**

CM 446103.

U.S. Army Court of Military Review.

10 June 1986.

For Appellant: Colonel William G. Eckhardt, JAGC, Lieutenant Colonel William P. Heaston, JAGC, Major Harry L. Williams, Jr., JAGC, Captain Craig E. Teller, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Major Patrick M. Flachs, JAGC, Captain Edmond R. McCarthy, Jr., JAGC (on brief).

Before WOLD, FELDER and NAUGHTON, Appellate Military Judges.

OPINION OF THE COURT

WOLD, Senior Judge: *

Contrary to his plea, appellant was found guilty by a general court-martial, which included officer and enlisted members, of committing lewd and lascivious acts on the body of another and of taking indecent liberties with a female under the age of sixteen. He now appeals from this conviction and argues, *inter alia*, that the trial judge erred in admitting into evidence certain out-of-court statements made by the victim, appellant's five-year-old daughter, to her babysitter.

I

The incident from which this issue arises occurred late one evening when appellant was home alone with J, his daughter. According to appellant's pretrial statement, he was lying in bed when J, wearing a nightgown and panties, entered and crawled up next to him. The two began to wrestle playfully until appellant "started getting curious about how she was developing." He had his daughter remove her panties and rubbed her vagina for several minutes. Appellant achieved an erection

* Senior Judge Wold took final action in this case prior to his reassignment.

and told J to kiss his erect penis; J complied. Not wanting "things to get too carried away," appellant sent J to her room, telling her not to say anything to anyone about what had happened.

The following afternoon, Mrs. Sharon Lightfoot was babysitting J when J approached her and complained that her "bottom" hurt. Mrs. Lightfoot asked her if she had gotten sand inside her clothing or had rubbed against her riding toys. J indicated that neither of these things had happened; however, she did utter the words, "My Daddy does." Mrs. Lightfoot asked J what she meant and J answered, "He rubs my bottom." Mrs. Lightfoot asked where he rubbed her and J pointed to her vaginal area. When Mrs. Lightfoot asked what he rubbed her with, J said that he used his fingers. The babysitter then pulled down the child's pants to see what she was talking about and noticed signs of irritation inside the labia of her vagina. When Mrs. Lightfoot asked J whether her mother knew about these things, J answered that she did not since her father had told her not to tell anyone about it.

Appellant was apprehended the next day and, after waiving his rights, made a detailed confession to the aforementioned acts. The trial counsel introduced this confession at trial but elected not to call J as a witness even though she was present and could have been called. She explained to the court that based on her interview of J and her observation of J as a witness at the pretrial hearing,[1] she had concluded that J was responsive to leading questions only, answered those questions nonverbally, and required prompting from her mother before answering. In the trial counsel's view, J's earlier statements to the babysitter would be more probative than her live testimony. Thus, she proposed calling Mrs. Lightfoot to recount the statements J had made to her the day following the incident. The military judge denied a defense motion *in limine* to exclude this evidence, ruling that the statements made by J to her babysitter bore sufficient indica-

tions of trustworthiness to be admissible under Military Rule of Evidence 803(24). We agree and affirm.

## II

This case requires us to address both an evidentiary and a constitutional issue. We turn first to the evidentiary question. As out-of-court statements offered to prove the truth of the matter asserted, J's statements to Mrs. Lightfoot are hearsay and therefore inadmissible absent an exception authorizing their admission. Mil.R.Evid. 801, 802. The government argues here, as it did at trial, that J's statements were admissible under Rule 803(24). This rule, the so-called "residual hearsay exception", provides in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> \* \* \* \* \* \*
>
> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

 The decision to admit evidence under this exception rests within the sound discretion of the trial judge, *United States v. Whalen,* 15 M.J. 872 (A.C.M.R.1983), but the evidence admitted must possess certain guarantees of trustworthiness. These guarantees are generally similar to those associated with the specific exceptions found under Rule 803. *United States v. Medico,* 557 F.2d 309, 315 (2d Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977). The out-of-court statements admitted against appellant meet

1. Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832 (1982).

these standards since they possess circumstantial guarantees of trustworthiness similar to those associated with the excited utterance and the medical treatment exceptions to the hearsay rule and are corroborated by other evidence.

The excited utterance exception provides that a hearsay statement may be admitted when it relates to "a startling event or condition while the declarant was under the stress of excitement caused by the event or condition or immediately thereafter." Mil. R.Evid. 803(2). The rationale for this exception stems from the special reliability associated with events which suspend the declarant's powers of reflection and fabrication. In fact, in the typical case, in-court testimony, which is by definition given after sufficient time for reflection and fabrication, would be less reliable than the excited utterance. *See* 6 Wigmore, *Evidence* § 1747 (Chadbourn rev. 1976). We find from the evidence of record that J's statements to her babysitter were made while J was still feeling some of the effects of the excitement caused by the previous evening's startling event. The conversation was initiated by J and her subsequent statements to Mrs. Lightfoot were made without the latter's use of leading questions. In addition, J's "childish terminology has the ring of verity and is entirely appropriate to a child of [her] tender years." *United States v. Nick*, 604 F.2d 1199, 1204 (9th Cir.1979). Thus, it is extremely unlikely that the child's statements were fabricated. While we do not hold that the statements were admissible under Rule 803(2),[2] the circumstances under which they were rendered do speak strongly for their reliability.

We further note the similarity of J's statements to those coming under the medical treatment exception to the hearsay rule. Mil.R.Evid. 803(4). It is clear that when she spoke to Mrs. Lightfoot, J was taking the opportunity to complain about the soreness in her vaginal area and thus was hoping to receive some form of treatment and relief. Individuals in need of such help, whether children or adults, have a strong incentive to be truthful. Moreover, such statements need not have been made to a physician. Statements made to family members, for example, are admissible under Rule 803(4) provided the other requirements of the Rule are met. *See* Advisory Committee Note, Fed.R.Evid. 803(4).[3] Once again, the circumstances speak strongly for reliability.

Finally, we note that the child's statements were corroborated by the physical evidence of inflammation of her vagina. *See Nick, supra,* 604 F.2d at 1204. The presence of such evidence, though not inculpatory with respect to any particular individual, tends to corroborate the core of the victim's statements, *i.e.,* that she had suffered some physical harm to this part of her body.

Based on the indicia of reliability provided by the sum of the above factors, we hold that J's statements were properly admitted under Military Rule of Evidence 803(24). The close resemblance of her statements to those which would be admissible under Rules 803(2) or 803(4), in combination with the presence of corroborating physical evidence, indicates the presence of enough "equivalent guarantees of trustworthiness" to make them admissible regardless of her availability as a witness.

### III

Our inquiry does not end here, however, since the absence of the declarant, J, from the courtroom raises the issue of denial of confrontation. Under the Sixth Amendment, an accused in a criminal prosecution "shall enjoy the right . . . to be confronted by the witnesses against him." Although this clause and the hearsay rule possess similar underpinnings, they are not coextensive and evidence admissible under a hearsay exception may be excludable under the confrontation clause. *See* E. Cleary, *McCormick on Evidence* § 252 (3d Ed.

---

**2.** *See United States v. Lemere,* 22 M.J. 61, 67–68 (C.M.A.1986).

**3.** Military Rule of Evidence 803(4) is a verbatim counterpart to this federal rule.

1984) (and cases cited therein). The Supreme Court has emphasized that the confrontation clause reflects a preference for face-to-face confrontation at trial and that "a primary interest secured by [the provision] is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). *See also California v. Green*, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970) ("it is this literal right to 'confront' the witness at the time of trial that forms the core of values furthered by the Confrontation Clause").

Before directly addressing this issue, however, we note that a question exists whether the instant case truly involves a situation in which appellant was denied his right to confront an opposing witness. Based on the trial counsel's comments, it is apparent that J was in the vicinity of the courtroom at the time of trial and could have been called as a witness. The trial counsel determined that such an action, at least from the government's point of view, would have been futile since J would have been an unexpressive and inarticulate witness. Trial defense counsel reached the same conclusion, apparently, since he also declined an offer to have J brought into court and subjected to his cross-examination. Thus, there was an opportunity for cross-examination, one the trial defense counsel declined to pursue. This "opportunity for cross-examination at trial with respect to ... [a] past version[ ] of the event" may be adequate to satisfy the requirements of the confrontation clause. *California v. Green*, 399 U.S. at 160, 90 S.Ct. at 1936. Moreover, for confrontation purposes, it does not follow that an accused's right to cross-examine is denied by the government whenever a witness' lack of testimonial capacity may impede cross-examination. The important point is that an accused has "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, — U.S. —, 106 S.Ct 292, 295, 88 L.Ed.2d 15 (1985) (emphasis in original).

While we incline to the view that J, the declarant, was available for cross-examination in the constitutional sense, our decision in this case is not dependent upon this determination since, under the circumstances presented, the government was not required to show unavailability. The Supreme Court has stated that competing interests of public policy and the necessities of a case "may warrant dispensing with confrontation at trial." *Ohio v. Roberts*, 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). In examining confrontation clause issues, the Court has devised two separate tests of admissibility. "First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ..., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Id.* at 65, 100 S.Ct. at 2538. Second, once the witness is shown to be unavailable, the hearsay must be examined to ensure it possesses sufficient indicia of trustworthiness and reliability. *Id.* at 65–66, 100 S.Ct. at 2538–39. Regarding the first restriction, necessity, the Court has indicated that a demonstration of unavailability is not always required. Citing its earlier decision in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Court in *Ohio v. Roberts* observed that "the utility of trial confrontation [can] be so remote" that the government need not be required to produce even a seemingly available witness. *Id.* at 65 n. 7, 100 S.Ct. at 2538 n. 7.

This principle, that the government need not always show unavailability when it seeks to introduce an out-of-court statement against an accused, has been significantly developed by the Court in its recent decision in *United States v. Inadi*, — U.S. —, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). In that case, the government, relying on Federal Rule of Evidence 801(d)(2)(E), introduced recorded statements of an unindicted co-conspirator without demonstrating the co-conspirator's unavailability. The district court admitted the recordings but

was reversed by the court of appeals, which held that although the requirements of Rule 801(d)(2)(E) had been met, the government also had to demonstrate unavailability in accordance with *Ohio v. Roberts, supra. United States v. Inadi,* 748 F.2d 812, 818 (3d Cir.1984). The Supreme Court reversed, holding that the confrontation clause does not require a showing of unavailability of a co-conspirator-declarant as a condition to admission of out-of-court statements made by such a declarant.

The Court first emphasized that its holding in *Ohio v. Roberts,* while reaffirming a longstanding rule that unavailability must be shown before former testimony can be admitted at trial, should not be read as requiring a showing of unavailability in all cases involving the introduction of out-of-court statements. 106 S.Ct. at 1125–26. Former testimony, the Court noted, is often

> only a weaker substitute for live testimony. It seldom has independent evidentiary significance of its own, but is intended to replace live testimony. If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version. When two versions of the same evidence are available, longstanding principles of the law of hearsay, applicable as well to the Confrontation Clause analysis, favor the better evidence.

106 S.Ct. at 1126.

The Court did not consider these principles applicable to coconspirator statements, however. The Court explained:

> Because they are made while the conspiracy is in progress, such statements provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court ... [T]he statement will often derive its significance from the circumstances in which it was made. Conspirators are likely to speak differently when talking to each other in furtherance of

their illegal aims than when testifying on the witness stand. Even when the declarant takes the stand, his in-court testimony seldom will reproduce a significant portion of the evidentiary value of his statements during the course of the conspiracy.

*Id.* The Court thus concluded that such statements "derive much of their value from the fact that they are made in a context very different from trial, and therefore are usually irreplaceable as substantive evidence." *Id.* at 1127.

In the Court's view, "little, if any benefit [would] be accomplished by the ... unavailability rule" in such cases, since the statement could be introduced regardless of the declarant's availability. *Id.* Moreover, "an unavailability rule is not likely to produce much testimony that adds anything to the 'truth-determining process' over and above what would be produced without such a rule." *Id.* Finally, the Court noted that Inadi's attorneys apparently concluded that the absent declarant's testimony would not have been particularly helpful. Although the defense could have demanded the presence of this declarant, and the compulsory process clause would have required his production, no such request had been made. Under such circumstances, the Court reasoned, "it is difficult to see what, if anything, would be gained by a rule that requires the prosecution to make the declarant 'available.' " *Id.* at 1127–28.

■ In our view, the considerations enunciated by the Supreme Court in *Inadi* apply with full force to the case at bar. As we have noted, J's statements were made under circumstances indicating they were truthful. The key factors behind our findings of trustworthiness and reliability are that J's statements bordered on the spontaneous and were roughly akin to those made for the purpose of medical treatment or diagnosis. Like the co-conspirator who does not tell knowing falsehoods during the course of the conspiracy because of his vested interest in its successful outcome, a person who is seeking relief from a physical ailment or injury does not intentionally

mislead a listener whose effectiveness in responding depends upon the accuracy of the information he receives. Similarly, because of the context within which it was rendered, an excited utterance will very likely reflect the truth as the declarant then perceives it. Accordingly, in light of these evidentiary underpinnings, little or nothing can be gained from the production of such declarants at trial. Thus, as with the out-of-court statements in *Inadi*, J's statements have "independent evidentiary significance" and are "irreplaceable as substantive evidence." Indeed, any testimony by J from the witness stand would likely have been inferior in evidentiary quality to her out-of-court statements since, first, the lapse of time would have affected her memory and, second, her motives for recounting accurate facts would be wholly dissimilar. Under these circumstances, it would make little sense to require the government to produce J, since the utility of confrontation would have been negligible. *Ohio v. Roberts*, 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7; *Dutton v. Evan*, 400 U.S. at 88–89, 91 S.Ct. at 219.[4]

We have considered the remaining assignments of error, including those specifically raised by appellant, and find them to be without merit.

The finding of guilty and the sentence are affirmed.

Judge FELDER and Judge NAUGHTON concur.

---

**4.** In this regard, we take particular note of the lack of any formal demand by trial defense counsel's that J be produced as a defense witness. As did the Court in *Inadi*, we view this circumstance as an implicit agreement by appellant that confrontation and cross-examination of J would have served no purpose. *See also United States v. Cree*, 778 F.2d 474 (8th Cir.1985) (waiver of confrontation right where, *inter alia*, declarant, a four-year-old, was physically present in courtroom but defense declined to call declarant as witness).