**UNITED STATES**

**v.**

**Staff Sergeant Richard M. WILLIAM-
SON, Jr., FR 218–78–2641 United
States Air Force.**

**ACM 25049.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 1 May 1985.

Decided 19 Nov. 1986.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Deborah A. Baker.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Marc Van Nuys.

Before HODGSON, FORAY and MICHALSKI, Appellate Military Judges.

## DECISION

MICHALSKI, Judge:

Contrary to his pleas, appellant was convicted in a bench trial of attempted rape and sodomy of his four year old daughter. We shall discuss the following two of three assigned errors:

THE MILITARY JUDGE ERRED BY ADMITTING A SOCIAL WORKER'S

HEARSAY TESTIMONY ABOUT VICTIM'S STATEMENTS AS STATEMENTS FOR PURPOSES OF MEDICAL DIAGNOSIS OR TREATMENT.

THE MILITARY JUDGE ERRED BY ADMITTING HEARSAY TESTIMONY BY CHILD'S GRANDFATHER UNDER THE RESIDUAL HEARSAY EXCEPTION WHEN DEFENSE HAD NO MEANINGFUL OPPORTUNITY TO CROSS–EXAMINE THE CHILD.

We find that the military judge did not err and affirm.

Appellant, his wife, R, and their two children, K and RW, lived together on McChord Air Force Base, Washington from March 1982 to July 1984. The marriage was unstable. Sometime in July 1984 an adult baby-sitter told R that she found K, who was about four years old at the time, touching the exposed private parts of the baby-sitter's four year old daughter. When the baby-sitter asked K about this, the child indicated that her father touches her the same way in the same place. Later that day, R asked K if her father touched her. K showed her vaginal area. R and her two children left her husband a day or two later. She first stayed with a friend for approximately a week and then took her children to her parents in Arkansas, arriving there in early August 1984.

One evening in August 1984 while K was with her grandfather, she blurted out an unsolicited and spontaneous series of remarks indicating that her "Daddy" sexually molested her i.e., that her father put his "pee-pee, poo-pooh in my mouth" and that he hurt her between her legs. She then asked her grandfather not to let her Daddy hurt her again. K was also observed experiencing bed wetting and nightmares. Because of these circumstances K's grandmother took her to Elizabeth Mitchell's Children's Center in Jacksonville, Arkansas to be seen by a social worker, Ms. Melissa Ann Stafford, a specialist in the treatment of sexually abused children and a member of the State of Arkansas Task Force for Child Sexual Abuse. She first saw K on 21 August 1984. The purpose of the first session was to develop rapport with the child, who was very withdrawn. K was seen again on 31 August 1984 when in response to Ms. Stafford's explanation of good and bad "touches", K responded by saying "My Daddy" in a reference to sexually "bad touches". After this session K was then referred to a staff psychologist for evaluation. The results of the psychological testing showed K had severe anxiety when compared to other children of her age and that she displayed undetermined psychological stressors which were of sufficient severity to either cause regression from a higher level of functioning or to stop her emotional and social growth. Part of the psychologist's summary said that K feared her father, and experienced "night terrors" in which she would wake up sweating with her hands over her groin area, yelling "no, no!" Ms. Stafford used this evaluation in her continuing therapy of K, whom she saw again on 21 September 1984. On that day, anatomically correct dolls were used. During this session K said her Daddy did "bad touches" showing her vaginal area and referring to the genital area of the male doll as the "needle". K went into detail about sexual activity with her father and what he did with his "needle" to her, which included sodomy. She was seen again on 5 October and on 12 October when she again talked about her sexual abuse, using such child-like phrases as "pee-pee, pooh-pooh in my mouth." Ms. Stafford testified that some of the goals of her treatment of K were to help the child get through the crisis, to help her develop trust in other adults, and to work through her fear.

 Concerning both assigned errors, appellant moved to suppress testimony from Ms. Stafford and the grandfather as to what K said to them as such testimony was hearsay and not admissible. Trial counsel argued for admissibility of Ms. Stafford's testimony under Mil.R.Evid. 803(4), as statements for purposes of medical diagnosis or treatment. Ms. Stafford's duties at the Center included gathering information about the problem, and the fami-

ly background, counseling children, and family therapy. The Center's patients were referred to it by courts, hospitals, schools, churches and ministers and some were self-referrals. After Ms. Stafford's credentials as an expert in the treatment of sexually abused children were established, she was allowed to testify.

Ms. Stafford testified that in her opinion K's statements to her were consistent and not the product of coaching. She opined that K appeared to comprehend the sexuality of her experience. For example, K's use of childish jargon such as "needle" for penis confirmed the social worker's conclusion that the child's self described experience originated with her. When asked about the need and circumstances of naming the appellant as the abuser, Ms. Stafford testified that K spontaneously accused her father of abuse, and without being solicited, repeated those accusations at other counseling sessions. As concerns the naming of the perpetrator, this proved beneficial for her therapy because it gave the social worker and others involved in K's treatment the necessary direction and shape of their course of treatment.

Under Mil.R.Evid. 803, certain statements are not excluded by the hearsay rule even though the declarant is available as a witness. Under Mil.R.Evid. 803(4) the following would be so admissible:

> Statements made for purposes of medical diagnosis or treatment and described medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

The analysis of Rule 803(4) at appendix 22–43, M.C.M., 1984, states it is taken verbatim from the Federal Rule, and that, "Potentially, the Rule is extremely broad and will permit statements made even to non-medical personnel (e.g. members of one's family) and on behalf of others so long as the statements are made for the purpose of diagnosis or treatment." According to S. Saltzburg, L. Schinasi and D.

Schlueter, *Military Rules of Evidence Manual,* second edition, 1986, at 642:

> "Rule 803(4) does not appear to be limited to statements made to doctors for treatment purposes. It includes doctors who diagnose *as well as those who treat.* (Emphasis added).... Under the rule, statements need not be made directly to a physician; they need only be made for the purpose of diagnosis or treatment. Thus, statements to nurses or hospital staff or ambulance personnel would qualify under the Rule."

The facts and circumstances here are similar to those in *United States v. Cottriel,* 21 M.J. 535 (N.M.C.M.R.1985). In the case before us, Ms. Stafford was a staff member of a child care center working together with other specialists for the purpose of helping sexually abused children, as was Ms. Ramelli the social worker in *Cottriel, supra,* who provided therapy herself in the form of psychological counselling. *Cottriel* stated at page 536 that Mil. R.Evid. 803(4) was not strictly limited to physicians and, "That the diagnostic treatment process in child sex abuse and some other cases touching on the behavioral disciplines has relatively recently been lengthened to include the social and psychological factors necessary to give a total picture of the patient."

We are convinced that the circumstances of K's interviews and tests at the Center were for the purpose of helping the child overcome her nightmares and other behavioral problems. There is no indication in the record that Ms. Stafford's sessions with K were for any other purpose than therapy. We therefore conclude that the statements made in this therapeutic environment were admissible under Mil.R.Evid. 803(4). *United States v. Deland,* 22 M.J. 70 (C.M.A.1986).

The underlying issue in appellant's second assignment of error is the correctness of the trial judge's determination that sufficient equivalent circumstantial guarantees of trustworthiness existed to allow the admission of the hearsay testimony from the grandfather. Mil.R.Evid. 803(24);

*Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

This Court has held that a statement admitted pursuant to the residual hearsay exception, Mil.R.Evid. 803(24) and 804(b)(5), does not violate the appellant's right of confrontation if there is circumstantial evidence of record supporting the statement's trustworthiness. *United States v. Ruffin,* 12 M.J. 952 (A.F.C.M.R.1982), *pet. denied,* 13 M.J. 494 (C.M.A.1982); *United States v. Crayton,* 17 M.J. 932 (A.F.C.M.R.1984), *pet. denied,* 19 M.J. 57 (C.M.A.1984); *United States v. Barror,* 20 M.J. 501 (A.F.C.M.R.1985), *pet. granted,* 21 M.J. 151 (C.M.A. 1985).

The prosecution called K as a witness. After no more that two minutes of testimony she became confused and frightened and left the stand. The trial judge then allowed the prosecution to call her grandfather, over defense objection, for the limited purpose of laying a foundation for the admissibility of K's comments to her grandfather about appellant under Mil.R.Evid. 803(24). The trial judge first found that the proffered evidence met the threshold requirements of the Rule, i.e., (1) it was offered as evidence of a material fact; (2) it was more probative on the point for which it was offered than any other evidence which the government could procure through reasonable efforts; (3) the general purposes of these rules and the interests of justice would best be served by admission of the statement in evidence. He then concluded there were circumstantial guarantees of trustworthiness in the statement of K to her grandfather and made further findings of fact, summarized in part, as follows:

(1) K's statement was totally unsolicited. There was no prompting by the grandfather in eliciting it. The statement was spontaneous;

(2) It was not "recanted" to the grandfather;

(3) K feared that her statement might have harmed the appellant. Because of K's age it is inconceivable that she could dream up such specific facts;

(4) This kind of information and knowledge is not within the realm of a 4 year-old child. It is indicative of truthfulness in that she apparently never said anything else bad about her father prior to the time related to by the grandfather. Prior to that time everything she ever said about her father was always positive;

(5) Neither the mother or the father were present at the time. K was approximately 4 to 4 1/2 years old when the statements were made;

(6) She had a very special relationship with her grandfather.

K was recalled as a witness and was again incapable of testifying. The trial judge correctly concluded that K was essentially "unavailable" and permitted the grandfather's testimony. He stated that, in any event, "availability" was not necessary under Mil.R.Evid. 803(4).

■ Child sex abuse cases present unique evidentiary problems. For example, it is not uncommon that these victims are unable upon command to publicly describe their traumatic experience, as in a court room. The telling of their story flows more easily and naturally when they sense security and trust, such as is felt in the private presence of a friend or close relative. Our legal system has recognized this problem. Military Rules of Evidence 803(24) and 804(b)(5) are thus available to provide a controlled conduit for the admission of such crucial evidence. *United States v. Barror, supra.* Unless the trial judge clearly abuses his discretion in making the determinations called for by Mil.R. Evid. 803(24) or 804(b)(5), we will not disturb his ruling. *United States v. LeMere,* 22 M.J. 61 (C.M.A.1986); *United States v. Hines,* 18 M.J. 729 (A.F.C.M.R.1984); *pet. granted,* 19 M.J. 246 (C.M.A.1984); *United States v. Crayton, supra.*

■ The circumstances that support the trial judge's determination in the exercise of his judicial discretion under the Rule provide the key that unlocks such evidence. In the case at bar, it is undisputed that the

**710**

child was sexually molested; the only issue is by whom. The record of trial convincingly establishes that the victim repeatedly and without hesitation named her molester. She first told her baby-sitter, then her mother and then her grandfather and finally her therapists. The revelation to her grandfather was spontaneous and without prompting. This court has little difficulty in finding ample indicia of reliability in her statements to her grandfather. *United States v. Crayton, supra; United States v. Quick,* 22 M.J. 722 (A.C.M.R.1986). The trial judge did not err in admitting this evidence. *United States v. Cree,* 778 F.2d 474 (8th Cir.1985).

We have examined the record of trial, the assignment of errors, and the government's reply thereto and have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Chief Judge HODGSON and Senior Judge FORAY concur.