UNITED STATES

v.

**Technical Sergeant James E. OLDHAM, FR 435–94–8441 United States Air Force.**

**ACM 25650.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 23 Aug. 1986.

Decided 11 May 1987.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Lieutenant Colonel Morris A. Tanner, Jr., Major Kathryn I. Taylor and Major Mark C. Ramsey, USAFR.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

## DECISION

SESSOMS, Senior Judge:

Despite his pleas, the appellant was found guilty at a general court-martial composed of officer members of divers acts of sodomy and other indecent acts with his daughter, T, a child under the age of 16 years. The sentence imposed included a dishonorable discharge, confinement for nine (9) years, forfeitures of $150 per month for nine (9) years, and reduction to airman basic. On appeal he complains that the testimony of Major Dubroff, an Air Force social worker who served as family advocacy officer at MacDill Air Force Base, was erroneously admitted under the medical diagnosis and treatment exception to the hearsay rule, Mil.R.Evid. 803(4). We agree.

Major Dubroff interviewed T on four occasions. His in-court testimony was based largely on the substance of only two of these interviews. His initial meeting with T occurred on 10 April 1986 at her elementary school on the installation. T was then ten years old. Her school principal, acting in accordance with a previously devised standard procedure, informed Major Dubroff by telephone that T had complained to her school counsellor of sexual abuse by her father. Major Dubroff, in turn, contacted Special Agent Shari Fisher, Office of Special Investigations (OSI). This was also pursuant to a standard procedure designed to minimize the number of interviews required in situations involving allegations of sexual abuse of children. Major Dubroff and SA Fisher went immediately to the school where they joined T, her principal, and her counselor in the principal's office. In a lengthy interview, in which all present participated to some extent, T recited details of a pattern of sexual abuse which she alleged had been committed by the appellant.

Major Dubroff scheduled a meeting with T and her mother in his office for the following day, 11 April 1986. (The appellant was performing temporary duty away from the installation at the time.) In this second meeting Major Dubroff spoke briefly to Mrs. Oldham in an attempt to explain the ramifications of the events which were then occurring. He also spoke to T privately. His purpose in talking with T at this time was to ease any reservations, or guilt feelings, she might be experiencing as a result of having made the allegations against her father. Major Dubroff scheduled a third meeting for 15 April 1986. During this meeting, at which Agent Fisher was also present, T, with the assistance of "anatomically correct" dolls, demonstrated the sexual acts she had earlier described. A fourth meeting was scheduled by Major Dubroff to be held in his office on 18 April 1986. This meeting was apparently for the benefit of a state agency called Health and Rehabilitative Services, which had members present. Major Dubroff explained that he did not take an active role in this meeting. Over objection by the accused, the Military Judge permitted Major Dubroff to relate the details of the first and third interviews, including a demonstration with the "dolls", to the court members. It is this testimony which forms the basis for appellant's assignment of error.

Major Dubroff described to the court his function, in those cases involving allegations of sexual abuse of children, as one of determining whether or not a report of this nature was substantiated. He explained that he had not made a medical diagnosis with respect to T. He did not believe that this function was either within the scope of his family advocacy charter or within his area of professional expertise. Although he testified that he might, when appropriate, refer a child victim for a particular form of medical evaluation or assistance, there is no evidence in the record that

he considered such action necessary in this case. When queried by defense counsel whether it was normal for an OSI agent to be closely involved with him in the initial stages of activity following the receipt of a report of suspected abuse, he responded: "They're part of the invest—of the information gathering process." Indeed, trial counsel described Major Dubroff's function during her argument on findings by saying that "he's supposed to ferret out information, gather some data—which is exactly what he did." Of course, as we view Major Dubroff's testimony in the light of Mil.R. Evid. 803(4), the key focus must be the purpose for which information was being gathered. In this case, the record simply does not support a conclusion that it was for a medically related purpose.

The charter of a family advocacy officer is broad in nature. But, as Major Dubroff correctly noted, it does not extend to rendering medical diagnoses. *See* Air Force Regulation 160–38, Air Force Family Advocacy Program, para. 9a (5 November 1981). Appellate government counsel have urged that we recognize that social workers, such as Major Dubroff, are "employed as part of an interdisciplinary approach now rather common in incest, rape, and molestation cases." *United States v. Cottriel,* 21 M.J. 535, 536 (N.M.C.M.R.1985), *pet. granted,* 23 M.J. 183 (1986). We have recently acknowledged this reality by our holding in *United States v. Williamson,* 23 M.J. 706 (A.F.C.M.R.1986). However, *Cottriel* and *Williamson* are readily distinguishable. In those cases the contacts with the social workers were initiated by concerned family members. In each instance the victims' families were seeking not only some resolution of sexual abuse allegations, but assistance with the emotional manifestations of the alleged abuse; namely, recurring nightmares. In the case before us, the family advocacy officer initiated the contact with the victim as an automatic response to a report of child sexual abuse. There is no evidence that his action was prompted by an indication of a medically related manifestation of the reported abuse.

We understand fully that a victim of child sexual abuse may well suffer a degree of emotional trauma and, in many instances, require some form of therapy. However, we do not construe Mil.R.Evid. 803(4) to be so broad as to encompass every encounter between the victim and medical personnel. We take our lead from *United States v. Deland,* 22 M.J. 70 (C.M.A.1986), the current definitive military precedent on this exception. *Deland* held that the military diagnosis exception was applicable to diagnostic information received by psychiatrists. However, *Deland* is fully as noteworthy for its strong words of caution that we remain true to the intent of the exception as it is for its specific holding. We must determine whether the interview of an alleged victim is more oriented toward developing trial evidence than to medical diagnosis or treatment. 22 M.J. at 75. The Court provided the following reminder: "The premise of this rule is that a patient seeking diagnosis or treatment from a physician has an incentive to be truthful because he believes that by telling the truth he will facilitate the doctor's task." *Id.* at 72. The record in this case fails to establish that premise. If T had an inherent incentive to speak truthfully to Major Dubroff, the reliability of her pretrial statements must be examined in the context of some other exception to hearsay. No such exception was addressed at trial.

Not every error in admission of evidence requires that a conviction be set aside. *State v. Rideau,* 278 So.2d 100 (La. 1973). A ruling must be wrong and harmful to constitute reversible error. *State v. Fredericks,* 154 Conn. 68, 221 A.2d 585 (1966). Harmless error results where it is not reasonably probable that the factfinders were swayed by invalid evidence. *United States ex rel Springle v. Follette,* 435 F.2d 1380 (2d Cir.1970). *See United States v. Clark,* 12 M.J. 978 (A.F.C.M.R. 1982). Appellant argues that the testimony of Major Dubroff was pivotal because it buttressed T's otherwise unreliable testimony. (T had denied the truth of her allegations on four different occasions prior to trial.) We agree. We believe that the

admission of Major Dubroff's testimony was prejudicial error. Accordingly, the findings and sentence are set aside. A rehearing may be ordered.

Judge STEWART concurs.

LEWIS, Judge (dissenting):

I agree with the majority's conclusion that Major Dubroff's testimony concerning the responses he received from T during his interviews with her was not admissible under Mil.R.Evid. 803(4). The record establishes that Major Dubroff and Special Agent Fisher were engaged in a predominantly investigative undertaking when T's statements were obtained. This did not facilitate the admission of her statements at trial. The law is not moving in this direction, nor should it be. *United States v. Deland, supra.*

Most of Major Dubroff's testimony should have been excluded, as it related directly to his interviews with T. However, one portion of his testimony which was admissible concerned an opinion as to whether a child of T's age might be able to fabricate graphic descriptions of sexual acts between her father and herself by virtue of having viewed a pornographic movie on a videotape. Major Dubroff's response was that this would be unlikely. This portion of his testimony was premised on other evidence in the record and was not dependent upon his past relationship with the victim and his insight from that relationship. Based on Major Dubroff's extensive experience in dealing with child sexual abuse victims, there is no question that he was competent to offer such an opinion to assist the triers of fact. Mil.R.Evid. 702.

Unlike the majority I do not conclude that the receipt of Major Dubroff's testimony was prejudicial error. I cannot deny that Major Dubroff was a very useful witness for the prosecution. However, in the final analysis, the case against the appellant was destined to succeed or fail on the testimony of his daughter. The members had ample opportunity to observe her demeanor during a lengthy stay on the witness stand, including rigorous cross-examination. She readily admitted that she had denied the truth of her accusations against her father to others on several occasions prior to trial. I am satisfied that the factors prompting these various denials were adequately explained in the record. If T's testimony at trial was believed by the triers of fact, which it most clearly was, Major Dubroff's testimony provided valuable reinforcement from a trained, objective source. If T had not been believed, Major Dubroff's testimony would have been viewed as mirroring a cruel fabrication, nothing more. In these circumstances, his testimony would have been of no discernible value to the prosecution. T's testimony was the key. In the judgment of the triers of fact she emerged as truthful from the grueling ordeal of the adversary process. This is a process that a child should not have to undergo more than once unless the ends of justice so dictate. I am not prepared to say that the members' reliance upon her testimony was misplaced in light of their consideration of other testimony they should not have heard. Justice does not demand that the process be repeated.

While T's testimony was the key, I do not view it in a vacuum. This testimony along with all other evidence received at trial, including that which was introduced by the defense, overwhelmingly establishes the guilt of the appellant. That conclusion is no less clear in my mind if Major Dubroff's testimony is totally disregarded. I further conclude that the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the accused was committed. *United States v. Lips,* 22 M.J. 679 (A.F.C. M.R.1986), *pet. denied,* 24 M.J. 45 (1987); Mil.R.Evid. 103(a); R.C.M. 920(f). Accordingly, I would affirm the findings of guilty and the sentence.