UNITED STATES

v.

Staff Sergeant Randal G. FLING, FR524–
29–7034, United States Air Force.

Misc. Dkt. No. 94–08.

U.S. Air Force Court of Military Review.

13 Sept. 1994.

Appellate Counsel for Appellee: Colonel Jay L. Cohen and Captain Mark J. Simms.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Colonel Thomas E. Schlegel, Major John H. Kongable, and Captain Jane M.E. Peterson.

Before SNYDER, RAICHLE, and YOUNG, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Judge:

Our original opinion, dated 25 August 1994, was unpublished. It is hereby reissued as a published opinion.

In a preliminary hearing, Article 39(a), UCMJ, 10 U.S.C. § 839 (1988), the military judge suppressed the testimony of four prosecution witnesses. The United States has filed a timely appeal of those rulings. Article 62, UCMJ, 10 U.S.C. § 862 (1988). We conclude that the military judge erred in part and reverse.

### I. Article 62, UCMJ, and the Standard of Review

■ The United States may appeal a ruling of the military judge which "terminates the proceedings with respect to a charge or specification or which excludes evidence that is substantial proof of a fact material in the proceeding." Article 62(a), UCMJ, 10 U.S.C. § 862(a) (1988). "[T]he Court of Military Review may act only with respect to matters of law, notwithstanding" Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988). Article 62(b), UCMJ, 10 U.S.C. § 862(b) (1988). We are bound by the military judge's factual findings unless they are unsupported by the evidence of record or were clearly erroneous. *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1985). In an Article 62 appeal, we are without power to find facts in addition to those found by the military judge. *United States v. Pacheco*, 36 M.J. 530, 533 (A.F.C.M.R.1992).

## II. Facts

Appellee was charged with two specifications of rape, two specifications of sodomy, and six specifications of committing indecent acts and indecent liberties. At trial, the prosecution failed to produce appellee's 7–year–old stepdaughter, Amanda, the alleged victim of these offenses. The defense moved to suppress evidence of statements Amanda made to four different witnesses. In granting the defense motion, the military judge made essential findings which we have summarized below.

Amanda was unhappy about going to Germany with her stepfather because she would be unable to see her father as often as she would in the United States. After arriving in Germany, Amanda told her school teacher, Ms. Purdy, that Appellee "touched me in my private places. . . . [I]n my private places where no one is allowed to touch me." When she made the statement, Amanda appeared "quiet, downcast, embarrassed, spoke slowly and was not crying." Ms. Purdy referred Amanda to Dr. Dubnick, the school counselor, for help, because she expected the school nurse to be busy at the time.

Dr. Dubnick was also busy, so Amanda was told to return later. Amanda returned at 1245 and told Dr. Dubnick that Appellee had touched her private part (pointing to her crotch) over her clothes, had kissed her, and put his tongue in her mouth. Dr. Dubnick asked if Appellee had done anything else; Amanda told her that sometimes Appellee would go into her room, take out his private part, rub it, rub it on her backside and her private part, and put it into her mouth. Dr. Dubnick asked if Appellee ever put his private part inside her; Amanda said he did and, "He does the same thing to Mom."

Dr. Dubnick told Amanda that the law and school procedure required her to report this information to the school nurse. Dr. Dubnick escorted Amanda to the school nurse, Ms. Green. Amanda repeated her description of the sexual abuse and said that she wished her mother would divorce her stepfather and remarry her real father. Neither Dr. Dubnick nor Ms. Green took information from Amanda to make a medical diagnosis or treatment. Ms. Green duly reported Amanda's complaint in accordance with procedures required by Department of Defense Dependent Schools regulations.

Agents of the Air Force Office of Special Investigations (AFOSI) took Amanda to the base clinic to see Major (Doctor) Murphy, Chief of Pediatrics, Rhein–Main Air Base. When Major Murphy asked Amanda what brought her into his office, she said that Appellee had placed his privates into her privates. After further discussion about what she meant, Amanda indicated that Appellee's privates meant his penis, and he had placed it in her mouth, vagina, and anus. Amanda said that Appellee had done this to her for some time. She could not tell Major Murphy the last time this occurred, but she did say that Appellee had rubbed her vaginal area over her clothing on the previous night. Amanda did not appear to be in any physical distress and was not there because of a physical ailment. Amanda told Major Murphy that she had seen her parents having sex on two occasions and she had access to magazines of a sexual nature at home.

After the initial complaint, Amanda met with Dr. Dubnick and Ms. Green on other occasions. Dr. Dubnick confronted Amanda about the truth of her allegations of sexual abuse. Amanda insisted she was telling the truth, and added, "He figured out how to put it up my butt." Amanda told Ms. Green that while she was in the shower, Appellee entered the bathroom and washed her private parts. Amanda said that on another occasion, Appellee entered her room and rubbed her private part while she looked out the window.

## III. The Applicable Law of Hearsay

■ Hearsay evidence is not admissible except as provided by the Military Rules of Evidence or Act of Congress applicable in trials by courts-martial. MIL.R.EVID. 802. In MIL.R.EVID. 803 and 804, the rules provide specific exceptions which permit, but do not require, the admission of certain hearsay evidence which is deemed to have some indicia of reliability. When the prosecution fails to produce the declarant to confront the accused and face cross-examination, the applicability of these exceptions has caused con-

siderable debate. *See White v. Illinois*, 502 U.S. 346, ——, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992); *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). However, the Supreme Court has made it clear that the absence of the declarant does not necessarily mean that the hearsay statements are inadmissible. "[W]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White*, 502 U.S. at ——, 112 S.Ct. at 743. If the prosecution fails to produce the declarant at trial, and the hearsay does not fall within a firmly rooted exception to the hearsay rule, the prosecution must demonstrate the witness' unavailability and show that the evidence bears adequate indicia of reliability. *See id.; Wright*, 497 U.S. at 814, 110 S.Ct. at 3146; *Roberts*, 448 U.S. at 65–66, 100 S.Ct. at 2538–39. The prosecution can establish the "adequate indicia of reliability" by showing that the statement is supported by "particularized guarantees of trustworthiness." When the declarant is not available, the " 'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances" which "include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Wright*, 497 U.S. at 819, 110 S.Ct. at 3148. The Supreme Court considered the following factors relevant, at least with regard to child declarants, to determine the reliability of the statement: (1) spontaneity and consistent repetition; (2) mental state of the declarant; (3) use of terminology unexpected of a child of similar age; and (4) lack of motive to fabricate. *Wright*, 497 U.S. at 821–22, 110 S.Ct. at 3150.

### A. Mil.R.Evid. 803(2)

■ Evidence of an excited utterance need not be excluded from admission into evidence. MIL.R.EVID. 803(2). An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." MIL. R.EVID. 803(2). The Court of Military Appeals has established a three-part test for admission of excited utterances: (1) "the statement must be 'spontaneous, excited or impulsive rather than the product of reflection and deliberation' " (quoting *United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981)); (2) "the event must be 'startling' " (citing *United States v. LeMere*, 22 M.J. 61, 67 (C.M.A. 1986)); and (3) "the declarant must be 'under the stress of excitement caused by the event' " (quoting MIL.R.EVID. 803(2)). *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A. 1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988). Although a person is less likely to be functioning under the stress or excitement of the event as time passes, the lapse of time is not dispositive. *United States v. Grant*, 38 M.J. 684, 691 (A.F.C.M.R.1993) (citing *United States v. Pearson*, 33 M.J. 913, 915 (A.F.C.M.R.1991)). In evaluating the time lapse, we will consider the age of the declarant, her physical and mental condition, the nature and circumstances of the event, and the subject matter of the statements. *Iron Shell*, 633 F.2d at 86. The excited utterance exception is so "firmly rooted" there is no requirement for the prosecution to demonstrate the declarant's unavailability at trial in order to satisfy the Confrontation Clause. *United States v. Clark*, 35 M.J. 98, 104–05 (C.M.A.1992) (citing *White*, 502 U.S. at ——, 112 S.Ct. at 739).

### B. Mil.R.Evid. 803(3)

■ A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition is not inadmissible. A statement of memory or belief, however, is not admissible to prove the fact of the memory or belief. MIL.R.EVID. 803(3). The drafters of the military rules have suggested that "[f]resh complaint by a victim of a sexual offense may come within this exception." MIL.R.EVID. 803(3) drafters' analysis.

Before we can rule on the admissibility of particular evidence under this exception, we first must decide if MIL.R.EVID. 803(3) is a "firmly rooted" hearsay exception. If it is, then no showing of the declarant's unavailability or of the reliability of the statements is necessary. *White; Bourjaily v. United*

*States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Although our research found only three cases which squarely dealt with the issue, all have held that MIL.R.EVID. 803(3) is a firmly rooted hearsay exception. *United States v. Lingle,* 27 M.J. 704, 708 (A.F.C.M.R.1988), *pet. denied,* 28 M.J. 455 (C.M.A.1989); *Terrovona v. Kincheloe,* 852 F.2d 424, 427 (9th Cir.1988); *Barber v. Scully,* 731 F.2d 1073 (2d Cir.1984); *But see Boliek v. Missouri,* 479 U.S. 903, 107 S.Ct. 302, 93 L.Ed.2d 276 (1986) (Marshall, J., dissenting from denial of certiorari).

### C. Mil.R.Evid. 803(4)

Evidence of statements made for the purpose of medical diagnosis or treatment are not inadmissible if they describe "past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment." MIL.R.EVID. 803(4). The rule is taken verbatim from the FED.R.EVID. 803(4) and is broad in its application. There is no requirement that the statement be made to a physician. Statements made to nurses, hospital staff, ambulance personnel, even family members or friends, may qualify for admission under this rule so long as they were made for the purpose of diagnosis or treatment. *United States v. Welch,* 25 M.J. 23, 25 (C.M.A.1987); S. SALTZBURG, L. SCHINASI & D. SCHLUETER, MILITARY RULES OF EVIDENCE MANUAL 794–95 (3d ed. 1991); MIL.R.EVID. 803(4) drafters' analysis; FED.R.EVID. 803(4) advisory committee's note. This is such a "firmly rooted" hearsay exception that there is no requirement for the prosecution to demonstrate the declarant's unavailability at trial in order to satisfy the Confrontation Clause. *Clark,* 35 M.J. at 104–05 (citing *White,* 502 U.S. at ——, 112 S.Ct. at 739).

There are two precedent conditions for the admission of such statements: (1) "the declarant must have 'some expectations of promoting [her] well-being and thus an incentive to be truthful'"; and (2) "the statements must be made by a declarant 'for the purpose of [medical] diagnosis and treatment.'" *United States v. Armstrong,* 36 M.J. 311, 313 (C.M.A.1993) (quoting *United*

*States v. Nelson,* 25 M.J. 110 (C.M.A.1987), *cert. denied,* 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988)). This rule focuses on the purpose for which the statement was made rather than the person to whom the statement was made. *United States v. Deland,* 22 M.J. 70, 73 (C.M.A.1986), *cert. denied,* 479 U.S. 856, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986). The declarant's statement need not be spontaneous and may be in response to questions asked for the purpose of diagnosis or treatment. *See Clark,* 35 M.J. at 105; *United States v. Edens,* 31 M.J. 267, 269 (C.M.A.1990). There may be some relaxing of the quantum of proof necessary when a child is being treated, but the government still must prove both precedent conditions. *Id.* (citing *United States v. Williamson,* 26 M.J. 115, 118 (C.M.A.1988)). Of course, if the witness was overly suggestive in eliciting this information from a small child, the military judge may still exclude the testimony. MIL.R.EVID. 403. A statement in which the declarant identifies an alleged perpetrator is admissible if there is a valid medical reason for such evidence and the victim perceives some benefit from disclosing it. *Deland,* 22 M.J. at 74; *United States v. Ortiz,* 34 M.J. 831, 834 (A.F.C.M.R.1992).

### D. Mil.R.Evid. 803(24) and Mil.R.Evid. 804(b)(5)

These hearsay exceptions are identically worded and taken substantially verbatim from the Federal Rules of Evidence. Both rules provide exceptions to the inadmissibility of hearsay for certain statements having "equivalent circumstantial guarantees of trustworthiness, if the military judge determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of [the Military Rules of Evidence] and the interests of justice will best be served by admission." MIL.R.EVID. 803(24), 804(b)(5). By their terms, MIL.R.EVID. 803(24) applies regardless of the availability of the declarant, whereas MIL.R.EVID. 804(b)(5) applies where the proponent is able to show that the declar-

ant is unavailable. The drafters of the military rules believed that MIL.R.EVID. 804(b)(5) was "superfluous" because MIL.R.EVID. 803(24) applies whether the declarant is available or not. MIL.R.EVID. 804(b)(5) drafters' analysis. However, as discussed above, if the prosecution does not produce the declarant for trial, MIL.R.EVID. 804(b)(5) applies, and the government must show the declarant "unavailable." These so-called "residual hearsay exceptions" should be "strictly construed and used very rarely and then only in exceptional circumstances." *United States v. Guaglione*, 27 M.J. 268, 274 (C.M.A.1988). They are " 'intended to apply [only] to highly reliable and necessary evidence.' " *United States v. Giambra*, 33 M.J. 331, 334 (C.M.A. 1991) (quoting S. SALTZBURG, L. SCHINASI & D. SCHLUETER, MILITARY RULES OF EVIDENCE MANUAL 659 (2d ed. 1986)).

█ A declarant is unavailable if she "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means." MIL. R.EVID. 804(a)(5). A declarant "is not unavailable unless the government has exhausted every reasonable means to secure [her] live testimony." *United States v. Burns*, 27 M.J. 92, 97 (C.M.A.1988). The Court of Military Appeals has held that "[r]easonable means include obtaining subpoenas and writs of attachment." *Ortiz*, 35 M.J. at 393. The prosecution must show that the subpoena was personally served on the witness and the appropriate statutory fees tendered. *Burns*, 27 M.J. at 97. But, a witness must be subject to United States jurisdiction to enforce either the subpoena or the writ of attachment. *Ortiz*, 35 M.J. at 393 (citing R.C.M. 703(e)(2)(A) discussion). "[I]t is unnecessary for the government to undertake 'a futile act.' " *United States v. Hines*, 23 M.J. 125, 133 (C.M.A.1986) (citing *Roberts*, 448 U.S. at 74, 100 S.Ct. at 2543).

## IV. Discussion

### A. Amanda's Availability

The United States attempted to show that Amanda was not available to testify, despite the prosecution's good faith efforts to secure her presence, in order to take advantage of the residual hearsay exception contained in MIL.R.EVID. 804(b)(5). In its response to Appellee's suppression motion, the government attached certain documents: (1) a copy of a court decree divorcing Amanda's mother, now Mrs. Fling, and father, granting Mrs. Fling "absolute custody" and "exclusive supervision, control and care" of Amanda; (2) a German subpoena addressed and, according to its contents, personally delivered to Amanda in care of Mrs. Fling; (3) a subpoena signed by the assistant trial counsel addressed to Amanda in care of Mrs. Fling, and, according to its contents, personally delivered to Mrs. Fling; and (4) invitational travel orders for Amanda, accompanied by a memorandum for Mrs. Fling/Amanda, signed by the trial counsel, asking for the presence of Amanda at the trial.

In addition, Mr. Ernst–Juergen Zschiesche, the local staff judge advocate's liaison officer with the German legal community, testified that, pursuant to provisions of the North Atlantic Treaty Organization Status of Forces Agreement, he had caused the German Government to issue a German subpoena for Amanda to appear on 9 May 1994. The subpoena was personally served on Amanda's mother on 27 April 1994. Mr. Zschiesche further stated that, under German law, the subpoena was not enforceable against a minor if the parents did not consent to her appearance.

The military judge ruled that the government had failed to demonstrate that Amanda was unavailable, finding as fact that the government had failed to show that (1) a German subpoena ordering Mrs. Fling to bring Amanda to court would not be effective; and (2) other means were attempted to secure Amanda's testimony, such as by deposition. The government asked the military judge to reconsider his ruling. The trial counsel made an offer of proof that the AFOSI agent who personally served Mrs. Fling with the subpoena would testify that Mrs. Fling asked him what would happen if they did not show up for trial. When the AFOSI agent suggested she would go to jail, Mrs. Fling said, "I'll just go to jail because she is not coming to testify."

The military judge reconsidered, but affirmed his previous ruling, finding the following facts: (1) the United States failed to show that a German subpoena addressed to Amanda's mother, Mrs. Fling, to bring Amanda could not have been enforced against the mother; (2) there is no evidence that Amanda's mother would have understood the German subpoena; (3) there is no evidence that a translation of the subpoena was ever served on Mrs. Fling; (4) there is no evidence to show that the prosecutors talked with Mrs. Fling in an effort to get her to produce the child; (5) there is no evidence to show that Mrs. Fling ever received the invitational travel orders or letter from the trial counsel concerning fees; (6) there is no evidence that Amanda's father was asked to secure her presence; and (7) there is no evidence that the prosecution attempted to preserve her testimony by deposition. The military judge concluded that even if he had found Amanda unavailable, he still would have excluded all evidence under MIL.R.EVID. 804(b)(5) because it lacked adequate circumstantial guarantees of trustworthiness.

■ It is obvious from the record that the prosecution made significant efforts to secure Amanda's presence at trial. It is also clear that they did not do a very good job of presenting these efforts to the military judge. Some very important evidence in support of the government's position was presented by way of averments of counsel and offers of proof. In deciding preliminary questions, such as the availability of a witness, the military judge is not bound by the rules of evidence. MIL.R.EVID. 104(a). He may accept averments of counsel on such issues, but is not required to do so. *United States v. Burrow*, 16 U.S.C.M.A. 94, 36 C.M.R. 250, 254–55, 1966 WL 4454 (1966). Since the military judge failed to make essential findings on the affirmative measures the government took to secure Amanda's presence, it is unclear whether he considered the averments or offer of proof in reaching his conclusions.

■ Normally, we would remand for the military judge to make the essential findings, on the established record, necessary for us to reach a reasoned decision. But, in light of the government's general failure on this issue, we are unable to find the military judge erred as a matter of law. Since the government has failed to establish Amanda's unavailability, we need not review the military judge's rulings as to the residual hearsay exceptions.

### B. Ms. Purdy's Testimony

■ The prosecution offered Ms. Purdy to testify to Amanda's statements as "excited utterances." MIL.R.EVID. 803(2). The military judge held that Ms. Purdy's testimony was not admissible because there was no evidence that Amanda was under any stress or excitement when she reported the abuse to Ms. Purdy. We hold the military judge did not err in this ruling. There was no evidence that she was acting under the stress of excitement when she made the statements. His findings are supported by the evidence of record.

### C. Dr. Dubnick's Testimony

■ The prosecution claimed Dr. Dubnick's testimony was admissible pursuant to MIL.R.EVID. 803(3) and 803(4). The military judge held the statements inadmissible: (1) MIL.R.EVID. 803(3): Amanda's statements to Dr. Dubnick were not of then existing state of mind, emotion or sensation or physical condition, but rather statements of past events which would be used to prove the facts remembered; (2) MIL.R.EVID. 803(4): the prosecution failed to present any evidence to show that Dr. Dubnick was going to make a medical diagnosis or prescribe treatment for Amanda or to show that Amanda went to seek treatment—she went because she was directed to do so by Ms. Purdy. The military judge also refused to allow Dr. Dubnick to testify to the statements Amanda made after the initial report because they were in response to Dr. Dubnick's questions, they were made to assist Dr. Dubnick in her Article 32, UCMJ, 10 U.S.C.A. § 832, testimony, 3 months had passed since the initial complaint and there was plenty of time for Amanda to reflect on the status of the case, and there was no indication Amanda had ever made such statements before. As the United States chose not to appeal the mili-

tary judge's ruling with regard to MIL. R.EVID. 803(4), we will not decide that issue.

The military judge's conclusions seem to be based on the erroneous assumption that the United States was offering all of Amanda's statements to Dr. Dubnick under MIL. R.EVID. 803(3). Such was not the case. We hold that the military judge erred as a matter of law in suppressing statements reciting Amanda's fear of appellee. He was correct, however, in excluding those statements reciting Appellee's prior threats. *United States v. Elmore*, 33 M.J. 387, 396 (C.M.A.1991).

## D. Ms. Green

■ The prosecution offered Ms. Green's testimony as being admissible under MIL. R.EVID. 803(3) and 803(4). The military judge held the statements inadmissible: (1) MIL.R.EVID. 803(3): Amanda's statements to Ms. Green were statements of past events to be used to prove facts remembered, thus outside the rule; and (2) MIL.R.EVID. 803(4): Amanda's statements to Ms. Green were done at the instigation of Dr. Dubnick, were made solely for the purpose of getting the allegations into the reporting channels required by the school, and the statements were not made for the purpose of medical diagnosis or treatment. The military judge also refused to let Ms. Green testify to the statements Amanda made after the initial reporting of the incident because they were made following Amanda reviewing "a text apparently prepared to assist young victims who testify," and she had time to reflect on the situation. As the United States chose not to appeal the military judge's ruling with regard to MIL.R.EVID. 803(4), we will not decide that issue.

As in the case of Dr. Dubnick's testimony, the military judge lumped all of Amanda's statements to Ms. Green together and ruled they did not meet the requirements of MIL. R.EVID. 803(3). The United States did not attempt to introduce all of the statements under this rule of evidence. We hold the military judge erred as a matter of law in suppressing statements in which Amanda expressed her then existing (at the time she made the statement) fear of appellant.

## E. Major (Doctor) Murphy

The prosecution offered Major Murphy's testimony as being admissible under MIL. R.EVID. 803(3) and 803(4). The military judge held the statements inadmissible: (1) MIL.R.EVID. 803(3): Amanda had spoken already with three people regarding this incident and she was presented at the pediatric clinic in the company of three persons assigned to the Air Force Office of Special Investigations; (2) MIL.R.EVID. 803(4): There was no evidence Amanda presented herself for medical treatment, no indication there was a medical reason for the visit, "only to examine the patient for evidence of sexual abuse," and therefore, no expectation of treatment.

■ The military judge erred as a matter of law in suppressing Amanda's statements to Major Murphy in which Amanda expressed her then existing (at the time she made the statement) fear of appellant. The fact that Amanda had spoken to others before talking to Major Murphy and she was presented to Major Murphy at the clinic by agents of the Air Force Office of Special Investigations does not render this evidence inadmissible. *Cf. Welch*, 25 M.J. at 26.

■ The military judge also erred as a matter of law in ruling that Amanda's statements to Major Murphy were not admissible under MIL.R.EVID. 803(4). To suggest that the rule requires a 7–year–old child to present herself to a physician for medical treatment, without the assistance and guidance of an adult, is absurd. We have thoroughly reviewed the military cases applying MIL. R.EVID. 803(4) and can find none in which a child of such tender years actually presented herself to the physician without the assistance of a parent, teacher, or other concerned individual. Nor would we expect to find one. The evidence of record also fails to support the military judge's conclusion that Amanda had no expectation of treatment, there was no medical reason for the visit, and the examination was performed solely for the purpose of obtaining evidence. Amanda's statements to Ms. Purdy, Dr. Dubnick, Ms. Green and Major Murphy were obvious statements of concern for her situation and a

plea for help to persons she believed could assist her. The fact that Amanda may not have known what type of help she needed is of little consequence. The evidence of record unequivocally establishes that Dr. Murphy saw Amanda at the base clinic, introduced himself as a doctor, and specifically asked Amanda if there was anything he could do to help her. Major Murphy needed to talk to her to find out what, if anything, was wrong so that if there is anything he needed to "fix or take care of," he could do it. While the Court of Military Appeals has refused to condone examinations which are more oriented to testifying at trial than to medical diagnosis or treatment, there is no evidence of record to support a conclusion that Major Murphy was not primarily interested in diagnosing and treating a patient who was asking for his assistance. *U.S. v. Deland*, 22 M.J. 70, 75 (C.M.A.1986).

## V. Conclusion

Accordingly, the rulings of the military judge suppressing the testimony of Dr. Dubnick, Ms. Green, and Dr. Murphy are hereby reversed in part, and the case will be returned to the military judge for proceedings in conformance with this opinion.

Senior Judges SNYDER and RAICHLE concur.