# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 39071**

_____

**UNITED STATES**
*Appellee*

**v.**

**Xavier L. RICE**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 21 November 2017

_____

*Military Judge:* Matthew S. Ward (arraignment); J. Wesley Moore.

*Approved sentence:* Bad-conduct discharge, 30 days hard labor without confinement, and reduction to E-1. Sentence adjudged 23 January 2016 by GCM convened at Hurlburt Field, Florida.

*For Appellant:* Major Annie W. Morgan, USAF; Captain Patricia Encarnación Miranda, USAF; Daniel Conway, Esquire.

*For Appellee:* Colonel Martin J. Hindel, USAF; Major Amanda L.K. Linares, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges.*[1]

Senior Judge HARDING delivered the opinion of the court, in which Judge SPERANZA and Judge HUYGEN joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

_____

[1] Chief Judge Drew recused himself from this case and was not involved in any capacity.

_____

HARDING, Senior Judge:

A general court-martial composed of officers convicted Appellant, contrary to his pleas, of three specifications of abusive sexual contact and one specification of assault consummated by a battery in violation of Articles 120 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928.[2] The members sentenced Appellant to a bad-conduct discharge, 30 days of hard labor without confinement, and reduction to E-1. The convening authority approved the sentence as adjudged.

Appellant asserts six assignments of error (AOEs): (1) whether the military judge erred in concluding that a statement made by Appellant did not qualify for admission in evidence under the excited utterance exception to the hearsay rule; (2) whether the military judge committed an abuse of discretion by instructing the panel on false exculpatory statements; (3–5) whether the evidence is legally and factually sufficient to support the findings of guilty;[3] and (6) whether, in light of *United States v. Hills,* 75 M.J. 350 (C.A.A.F. 2016), the military judge erred by instructing members that evidence of the other charged sexual offenses could be considered regarding whether Appellant had a propensity to commit a particular charged offense. We find no prejudicial error and affirm.

## I. BACKGROUND

A squadron holiday party at a hotel and the car ride home afterwards provide the backdrop for Appellant's convictions. Airman First Class (A1C) GP described how Appellant, without her consent, touched her buttocks and then returned 15 minutes later to touch her thigh. Senior Airman (SrA) RJ, along with three other witnesses, described how Appellant pulled up SrA RJ's dress and touched her buttocks in the process and how she reacted. Finally, Master Sergeant (MSgt) JC, as corroborated by MSgt ML, explained how Appellant reached from the back seat of MSgt ML's car and touched MSgt JC's breast as MSgt ML drove Appellant to his apartment. Appellant testified he had no memory of any of these events. In an attempt to account for his lack of memory and his actions, Appellant speculated that he may have been drugged at the holiday party.

---

[2] Appellant was acquitted of a specification of sexual assault. The finding of guilty for the assault consummated by a battery was as a lesser included offense of another abusive sexual contact specification.

## II. DISCUSSION

### A. Excited Utterance

In an effort to negate the element of specific intent to gratify his sexual desire as to the charged abusive sexual contact offenses and to support a defense of involuntary intoxication, Appellant, relying on the excited utterance exception to the hearsay rule, attempted to elicit from MSgt JC his own out of court statements to MSgt JC that he thought he was drugged on the night of the holiday party. Appellant asserts that the military judge committed prejudicial error by excluding Appellant's out of court statements. We disagree. We find that the military judge did not abuse his discretion in excluding Appellant's out of court statements to MSgt JC. Further, given the subsequent admission of the out of court statement to MSgt JC during the Government's rebuttal case and other testimony on this matter throughout the trial, its short-lived exclusion during the earlier part of the trial did not prejudice Appellant.

The cross-examination of MSgt JC included a series of questions focused on her interactions with Appellant in the hotel parking lot the morning after the holiday party. Appellant, who, along with MSgt JC, had been driven home by MSgt ML, had returned to the hotel to retrieve his vehicle. MSgt JC had likewise returned to the hotel for her car. She arrived around the same time as Appellant and described his demeanor as confused and agitated. Trial counsel objected when MSgt JC was asked whether Appellant said anything to her at that time. At a hearing outside the presence of the court members, MSgt JC described her conversation with Appellant:

> One of the first things he asked was like or said was, "I don't know how I got home last night. Does anybody know how I got home last night?" And I said, "Yes, Sergeant [ML] took you home," and kind of motioned towards Sergeant [ML], and, you know, at that point he said, "thank you." He may have even said nice to meet you, because, you know, I guess he didn't remember her from the night before and he had asked about his keys, and I said that I had left his keys somewhere in his apartment, because he had a spare with him, I think. So that was kind of the confusion part of the initial conversation.

> [H]e felt that he may have been drugged, because he didn't feel like he was hung over. He felt that there was a -- he said, "I think maybe I was drugged. Can I get somebody's phone? Mine is dead. Can I use somebody's phone to call the First Sergeant? I think I want to go to the emergency room." And he made a comment that he had already taken a pee that morning, and he hoped that

didn't mess anything up, if they could test him, I guess, is where that was going.

When asked to describe Appellant's demeanor immediately before and as Appellant made these statements, MSgt JC described Appellant as "a little excited, a little confused, and maybe a little panicky."

After hearing argument from both sides as to whether the foundation for an excited utterance was met, the military judge ruled that it was not:

> The statements lack the spontaneity that is required to qualify as an excited utterance. There was sufficient opportunity for reflection [and] for planning on the part of the accused before making the statement, at least the 15-minute drive from his home back to the hotel, if not longer. The foundation simply is not laid. This objection is sustained.

We review a military judge's ruling on the admissibility of evidence for abuse of discretion. *United States v. Moolick*, 53 M.J. 174, 176 (C.A.A.F. 2000). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (citations and quotation marks omitted). An abuse of discretion occurs when the findings of fact are clearly erroneous or the conclusions of law are based on an erroneous view of the law. *United States v. Hollis*, 57 M.J. 74, 79 (C.A.A.F. 2002). As such, the findings of fact are reviewed under the clearly erroneous standard and conclusions of law are reviewed de novo. *United States v. Cote*, 72 M.J. 41, 44 (C.A.A.F. 2013). "On questions of fact, [we ask] whether the decision is *reasonable*; on questions of law, [we ask] whether the decision is *correct*." *United States v. Baldwin*, 54 M.J. 551, 553 (A.F. Ct. Crim. App. 2000), *aff'd,* 54 M.J. 464 (C.A.A.F. 2001) (citation omitted).

Military Rule of Evidence (Mil. R. Evid.) 803(2) defines an excited utterance as "a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." The admissibility of an excited utterance is based on the premise "that a person who reacts to a startling event or condition while under the stress of excitement caused thereby will speak truthfully because of a lack of opportunity to fabricate." *United States v. Jones*, 30 M.J. 127, 129 (C.M.A. 1990) (internal quotation marks omitted). "The guarantee of trustworthiness of an excited utterance is that the statement was made while the declarant was still in a state of nervous excitement caused by a startling event." *United States v. Chandler*, 39 M.J. 119, 123 (C.M.A. 1994). In order for there to be an excited utterance, the proponent needs to demonstrate the following: (1) the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation; (2)

the event was startling; and (3) the declarant was under the stress of excitement caused by the event. *United States v. Arnold*, 25 M.J. 129 (C.M.A. 1987). Although the statement relating to the startling event "need not always follow immediately after the event, a lapse of time between the event and the utterance creates a strong presumption against admissibility." *Jones*, 30 M.J. at 129. In evaluating the time-lapse, we consider the age of the declarant, his physical and mental condition, the nature and circumstances of the event, and the subject matter of the statements. *United States v. Fling*, 40 M.J. 847, 851 (A.F.C.M.R. 1994).

At trial,[4] Appellant argued that the startling event was waking up without a memory of how he got home the night before and that this event caused Appellant stress. The military judge did not make any conclusions as to whether Appellant's confusion and agitation due to his amnesia qualified as the stress of excitement caused by a startling event. Instead, the military judge found at least 15 minutes had passed since Appellant woke up and arrived at the hotel and concluded those 15 minutes provided Appellant the opportunity for reflection such that his statements to MSgt JC lacked the spontaneity required for an excited utterance. The military judge's findings of fact are supported by the record and his conclusions reflect a correct view of the law.

Assuming arguendo that the military judge abused his discretion in excluding the statements at issue, we find no prejudice. We evaluate prejudice from an erroneous evidentiary ruling by weighing (1) the strength of the Government's case, (2) the strength of the Defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question. *See United States v. Weeks*, 20 M.J. 22, 25 (C.M.A. 1985). In this case, however, we need not reach those factors. The eventual admission during the Government's rebuttal case of Appellant's statements removed any possible prejudice to Appellant.

MSgt JC was called as a rebuttal witness by the Government. During cross-examination of MSgt JC, the Defense successfully elicited Appellant's out of court statements to her that he believed that he was drugged. These are the very statements at issue in this appeal. In light of their admission during the Government's rebuttal case, the exclusion of the statements on the Government's objection was only temporary.

---

[4] On appeal, Appellant asserts that the startling event was seeing other Airmen in the parking lot of the hotel and that his statements were spontaneous without time for reflection. As we have found that the temporary exclusion of Appellant's out of court statements did not prejudice him, we need not consider whether the failure to make this argument for admission at trial qualifies as forfeiture or waiver or whether the event was startling for the purposes of an excited utterance.

Distinct from Appellant's out of court statements to MSgt JC about the possibility of being drugged, Appellant's similar statements to SrA RJ were admitted, as were Appellant's statements to others, which came out in his own testimony. During the direct examination of SrA RJ in the Government's case-in-chief, she was asked about her communications with Appellant the day after the holiday party. When asked by trial counsel what Appellant was upset about, SrA RJ answered that "he felt that someone had drugged him." Later in that same direct examination, trial counsel asked why Appellant was angry. SrA RJ replied, "Because [Appellant] thought someone drugged him and he felt that I wasn't taking it seriously."

Appellant testified during the Defense's case presentation. When asked whether he told anybody that he felt like he was drugged, he replied yes. The military judge admitted Appellant's answer over the objection of the Government. During the cross-examination of Appellant, trial counsel elicited from Appellant the fact he told SrA RJ, MSgt JC, and the people standing near him in the hotel parking lot, as well as his first sergeant, that he thought he had been drugged. As noted above, MSgt JC was called as a witness in the Government's rebuttal case and, during the cross-examination, corroborated the conversation with Appellant in the parking lot, where he told MSgt JC that he felt like he was drugged due to the fact that "he did not feel like it was just him being drunk."

Whether intentionally or not, trial counsel elicited from SrA RJ Appellant's out of court statements about his belief he was drugged after successfully objecting to admission of a similar statement made to MSgt JC. The military judge then permitted Appellant to testify about his own out of court statements about his belief he was drugged over the objection of trial counsel. Trial counsel, apparently adapting trial strategy to the evidence that had been admitted, then accounted for all similar out of court statements made by Appellant during the cross-examination; no longer objected when Appellant did the same; and instead focused on the lack of evidence to support Appellant's involuntary intoxication defense.

## B. False Exculpatory Statement Instruction

Over the Defense's objection, the military judge gave the court members the standard instruction on false exculpatory statements. *See Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9 at ¶ 7-22 (10 Sep. 2014). Appellant argues the military judge abused his discretion by giving this instruction. We disagree.

Whether a military judge properly instructed the court members is a question of law we review de novo.

6

(C.A.A.F. 2003). A military judge's decision to provide an instruction is reviewed for an abuse of discretion. *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996).

The instruction given by the military judge reflects an established principle of law, namely that "false statements by an accused in explaining an alleged offense may themselves tend to show guilt." *See United States v. Colcol*, 16 M.J. 479, 484 (C.M.A. 1983) (citation omitted). The *Benchbook* provides that this instruction for false exculpatory statements can be given if (1) the Government introduces evidence of an accused's false statement or a false explanation concerning an alleged offense, and (2) the Government contends that an inference of consciousness of guilt should be drawn from this evidence. *Benchbook*, at ¶ 7-22. This instruction is not appropriate when the accused has made only a general denial of guilt because that "does not demonstrate any consciousness of guilt." *Colcol*, 16 M.J. at 484. When the alleged false statement is merely a general denial of guilt, "the factfinder must decide the very issue of guilt or innocence" and thus an instruction would "produce confusion because of its circularity." *Id.*

During Appellant's direct examination, trial defense counsel asked when Appellant learned what had occurred on the night of the holiday party. Appellant replied, "Until like today, I really didn't have a strong, like – I had no idea. I swear. I had no idea." Specifically regarding the charged sexual assault of SrA RJ that allegedly occurred the day after the party,[5] trial defense counsel queried when Appellant first realized SrA RJ was upset about the incident. Appellant responded, "When I was charged in July. Until then, I just thought she wasn't in the mood. Like I had no idea it was to that extent."

On cross-examination, Appellant reiterated that it was not until trial when he first learned the details of the allegations of his misconduct at the holiday party and in MSgt ML's vehicle on the ride home. Even after trial counsel confronted him with the fact that he had seen at least some of the evidence against him as early as July 2015, when charges were preferred, Appellant maintained his stated ignorance of the details of the evidence against him. When trial counsel pressed Appellant to specify he "learned for the first time [that] week," Appellant attempted to modify his earlier testimony and replied, "Just hearing the fluality [sic] of actually, you know, people's recollections of what happened during the actual party."

The military judge provided his reasoning for giving the false exculpatory statement instruction as follows:

---

[5] Appellant was acquitted of the specification of sexual assault.

> My basis for giving the instruction . . . are the accused's statements on cross-examination or on direct examination that actually until today, he had no idea what had happened and that with regard to the incident against Airman [RJ], when he was charged was his first indication that she was anything more than just not in the mood. I believe those were significantly contradicted on cross-examination and through other evidence and do fit within the contours. He was confronted at the time with criminal activity. He provided an explanation that tended to lessen his guilt, and there had been evidence to show that that explanation was not accurate.

The military judge expressly stated that his decision to give the false exculpatory statement instruction did not depend on Appellant's stated belief that he may have been drugged. The instruction given by the military judge did not refer to any particular statement and made clear that whether any statement was made, voluntary, and indeed false and what significance, if any, to attach to it were all matters for the members to decide.

Appellant's statement that he had "no idea" until his trial what happened at the party and in the car went beyond what might be characterized as a general denial of guilt. Appellant's primary defense at trial was that he was so impaired, due to voluntary intoxication, involuntary intoxication, or both, that he could not form the specific intent required to commit the abusive sexual contact offenses. Consistent with that level of impairment was the evidence of amnesia induced by intoxication, resulting in Appellant's ignorance of what happened at the party and in the car afterwards. The Government's argument for the false exculpatory statement instruction was that Appellant essentially relied on that claim of ignorance when he asserted that, until the day of trial, he had "no idea" what happened. To counter Appellant's assertion, the Government confirmed with Appellant that he had been provided evidence in the case prior to the date of trial and called MSgt JC in rebuttal to establish that she had told him on the morning of 6 December 2014 that he had been "handsy" the night before. By introducing evidence that *may* have shown that the statements made by Appellant were untrue and by presenting a colorable argument to support an inference of consciousness of guilt, the Government met the required predicate for the instruction. The instruction in question was fairly raised by the evidence at trial, and the military judge did not abuse his discretion by giving it to the members.

## C. Legal and Factual Sufficiency

Appellant next challenges the legal and factual sufficiency of the evidence for each of the specifications. We find the evidence legally and factually sufficient for each.

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993). The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term "reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to make an "independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

### 1. Evidence of Appellant's Intent and Lack of Accident

Before discussing the sufficiency of the evidence presented as to each offense, we note at the outset that the military judge provided the members an appropriate instruction on how some evidence, regardless of what charged offense it was admitted to prove, could be used to prove Appellant's intent or lack of accident for all of the abusive sexual contact specifications. The military judge, in accordance with Mil. R. Evid. 404(b), instructed the members as follows:

> I just instructed you that you may not infer the accused is guilty
> of one offense because his guilt may have been proven on another
> offense, and that you must keep the evidence with respect to
> each offense separate. However, there has been some evidence
> presented with respect to Specifications 2 through 5[6] of the
> Charge which also may be considered for a limited purpose with

---

[6] Specification 2 through 5 were the four abusive sexual contact specifications based on the events at the holiday party and in MSgt ML's car afterwards.

respect to the other offenses charged in Specifications 2 through 5. This evidence, that the accused engaged in the acts alleged in Specifications 2 through 5 of the Charge may be considered for the limited purpose of its tendency, if any, to prove that the accused intended to gratify his sexual desires or to negate an inference that the accused's acts were accidental.

In other words, in determining whether any particular touching by Appellant as alleged in Specifications 2 through 5 was accidental or done with the intent to gratify his sexual desire, the members could properly consider evidence that Appellant (1) lifted up SrA RJ's dress and in the process touched her buttocks, (2) touched A1C GPs buttocks and thigh; and (3) touched MSgt JC's breast.

### 2. Assault Consummated by a Battery of SrA RJ

Appellant was found not guilty of the charged offense of abusive sexual contact of SrA RJ by "grabbing her buttocks," but he was convicted of the lesser included offense of assault consummated by a battery and guilty of the substituted words "touching her buttocks."[7] In order to find Appellant guilty of this offense, the members had to conclude beyond a reasonable doubt that (1) Appellant did bodily harm to SrA RJ; (2) he did so by touching her buttocks with his hand, without the consent of SrA RJ; and (3) the bodily harm was done with unlawful force or violence. *See Benchbook*, at ¶ 3-54-2.

Appellant and SrA RJ had previously been in a romantic relationship. As of the date of the holiday party, SrA RJ described her relationship with Appellant as "friends with benefits," meaning friends who engage in consensual sexual activity but do not consider themselves in a committed and presumably monogamous romantic relationship. She noted that Appellant was becoming "touchy-feely" the night of the holiday party and openly talked about subjects he normally would not discuss in a public setting. That night Appellant approached SrA RJ three separate times as she was seated at the hotel lobby bar, and he attempted to hug her. SrA RJ resisted on each occasion by pulling away from Appellant. On the third occasion, SrA RJ left her seat at the bar and walked toward the restroom. Appellant followed her and pulled up her dress, exposing her undergarments to public view.

SrA RJ testified that Appellant's hands touched her body as he lifted up her dress, but she did not remember exactly what part of her body he touched as she was focused on the fact that he was pulling up her dress. In response to Appellant's actions, she told him "no" and slapped him. MSgt JC, who had just

---

[7] The members excepted the words "grabbing her buttocks" from the specification and found Appellant not guilty of those words.

departed the restroom, did not observe Appellant lifting up SrA RJ's dress, but she heard SrA RJ say "no" or "stop" and she heard the sound of a slap. Two other witnesses observed where Appellant placed his hands. LG, a squadron co-worker, testified that he saw Appellant's hands on SrA RJ's thigh, moving up to her buttocks as Appellant lifted up her dress. RB, a hotel employee, stated she saw Appellant's hands touch SrA RJ, including her buttocks. Considering the evidence in the light most favorable to the Prosecution, we conclude that a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the Appellant's guilt beyond a reasonable doubt.

### 3. Abusive Sexual Contact of MSgt JC

In order to find Appellant guilty of this offense, the members had to conclude beyond a reasonable doubt that (1) Appellant committed sexual contact upon Technical Sergeant (TSgt) JC,[8] to wit: touching her breast and side with his hand with the intent to gratify his sexual desire; (2) he did so by causing bodily harm to her, to wit: touching her breast and side with his hand; and (3) he did so without the consent of TSgt JC. *See Benchbook*, at ¶ 3-45-6. "Sexual contact" includes touching the breast or buttocks with an intent to arouse or gratify the sexual desire of any person. *Id.* at ¶ 3-45-6.d.

After the incident with SrA RJ in the hotel, MSgt JC observed Appellant in the hotel parking lot, sitting in the driver's seat of his Jeep while other Airmen attempted to convince him not to drive because he was drunk. Because MSgt ML was already going to drive MSgt JC home, MSgt JC asked MSgt ML if they could also take Appellant home if it was on their way. SrA RJ confirmed Appellant's apartment was on the way and MSgt ML agreed to drive Appellant home. Two other Airmen then persuaded Appellant to go with MSgt ML and MSgt JC. Appellant sat in the driver-side back seat behind MSgt ML. MSgt JC sat in the passenger-side front seat. As neither MSgt ML nor MSgt JC had been to Appellant's apartment before or otherwise knew where he lived, Appellant indicated to MSgt ML when and where to turn.

MSgt JC testified that on the way to Appellant's apartment, Appellant placed his right hand on her left breast and moved his hand down to around her waist. The touching was over clothing. She further described the touching of her breast by Appellant as a "rub" or "stroke" contrasted with merely a "pat"

---

[8] MSgt JC was a technical sergeant on the date of the alleged offense and this rank was used in the charge. By the time she testified at trial, she had been promoted to E-7.

intended to get someone's attention. MSgt JC responded by grabbing Appellant's hand and pushing it into the floorboard of the backseat. According to MSgt JC, a couple of minutes after she let go of Appellant's hand, Appellant again reached for her breast. She grabbed his hand once more. MSgt ML testified that she did not recall whether Appellant touched MSgt JC's breast the first time Appellant reached from the back seat but stated that Appellant reached multiple times and attempted to grab MSgt JC's breast. When asked whether she saw where Appellant grabbed MSgt JC, MSgt ML replied, "[Appellant] was grabbing her breast or definitely not her arm -- her breast area -- and I don't think he quite got there every single time, because she was stopping him."

Appellant avers that this evidence is both legally and factually insufficient. His argument characterizes the contact on the side of MSgt JC's breast as a momentary touching during a motion that went from her shoulder to her waist. Appellant further emphasizes this touching took place while he was clearly intoxicated and argues that there was no evidence of intent to gratify sexual desire. We disagree. MSgt JC's testimony, as corroborated by MSgt ML, was clear that Appellant reached for MSgt JC's breast multiple times and that the touching was more a "rub" or "stroke" than a momentary "pat" or accidental touch. Regarding Appellant's capacity to form a specific intent, there was evidence that Appellant was slurring his speech and had exhibited impaired judgment that evening, but Appellant demonstrated an awareness of his surroundings when he successfully instructed MSgt ML how to get to his apartment. The evidence of Appellant's repeated touching of MSgt JC's breast area was compelling circumstantial evidence of his intent to gratify his sexual desires and lack of an accidental touching. Appellant's intent to gratify his sexual desire by touching MSgt JC's breast is further supported by the evidence of Appellant pulling up SrA RJ's dress and touching A1C GP's buttocks and thigh earlier that night. Considering the evidence in the light most favorable to the Prosecution, we conclude that a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

### 4. Abusive Sexual Contact of A1C GP

Appellant was convicted of two specifications of abusive contact against A1C GP: one for touching her buttocks and one for touching her thigh. In order to find Appellant guilty of these offenses, the members had to conclude beyond a reasonable doubt for each touching that (1) Appellant committed sexual contact upon A1C GP, to wit: touching her buttocks with his hand with the intent to gratify his sexual desire (Specification 4) and touching her thigh with his hand with the intent to gratify his sexual desire (Specification 5); (2) he did so

12

by causing bodily harm to her, to wit: touching her buttocks with his hand (Specification 4) and touching her thigh with his hand (Specification 5); and (3) he did so without the consent of A1C GP. *See Benchbook*, at ¶ 3-45-16.

Appellant once again avers the evidence is insufficient to support a conclusion that he formed the intent to gratify his sexual desire for any of the offenses, including those committed against A1C GP. Contrary to Appellant's assertion, there was ample evidence to support a conclusion that Appellant formed the intent to gratify his sexual desire. The members were presented with evidence that Appellant touched A1C GP's buttocks, returned 15 minutes later to touch A1C GP's thigh, touched SrA RJ's buttocks in the process of lifting up her dress, and later touched MSgt JC's breast. Considering the evidence in the light most favorable to the Prosecution, we conclude that a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the Appellant's guilt beyond a reasonable doubt.

## D. Propensity Instruction

Finally, Appellant avers the military judge erred by instructing members that evidence of the other charged sexual offenses could be considered regarding whether Appellant had a propensity to commit a particular charged offense. Without objection from the Defense, the military judge instructed the court members, *inter alia*, as follows with respect to their findings:

> Further, evidence that the accused committed the sexual offenses alleged in each of the specifications of the Charge, that's 1 through 5, may be considered by you as evidence of the accused's propensity, if any, to commit the remaining sexual offenses alleged in the specifications of the Charge. You may not, however, convict the accused of one offense merely because you believe he committed these other offenses or merely because you believe he has a propensity to commit sexual assault. Each offense must stand on its own and proof of one offense carries no inference that the accused is guilty of any other offense. In other words, proof of one sexual assault creates no inference that the accused is guilty of any other sexual assault. However, it may demonstrate that the accused has a propensity to commit that type of offense.

We agree with Appellant that the military judge erred by giving the members this instruction; however, we find that this error was harmless beyond a reasonable doubt.

### 1. Law

The meaning and scope of Mil. R. Evid. 413 is a question of law that is reviewed de novo. *Hills*, 75 M.J. at 354. Instructional errors are also reviewed de novo. *Id.* at 357.

Mil. R. Evid. 413(a) provides that, in a court-martial where the accused is charged with a sexual offense, evidence that the accused committed other sexual assaults may be admitted and considered on "any matter to which it is relevant." This includes using evidence of sexual assaults to prove the accused has a propensity to commit sexual assault. *United States v. James*, 63 M.J. 217, 220 (C.A.A.F. 2006).

However, in *Hills*, the United States Court of Appeals for the Armed Forces (CAAF) held that evidence of the accused's commission of a sexual assault may *not* be used to prove propensity if the alleged sexual assault is charged in the same court-martial and the accused has pleaded not guilty to it. *Hills*, 75 M.J. at 356. The CAAF further held that the instructions accompanying the admission of evidence of charged offenses for Mil. R. Evid. 413 purposes "violated Appellant's presumption of innocence and right to have all findings made clearly beyond a reasonable doubt, resulting in constitutional error." *Id.* Because "there are constitutional dimensions at play," prejudice for such an error must be tested for harmlessness beyond a reasonable doubt. *Id.* at 357 (citations omitted). "An error is not harmless beyond a reasonable doubt when 'there is a reasonable possibility that the [error] complained of might have contributed to the conviction.'" *Id.* (Citations omitted). "To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Id.* at 358.

In *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017), the CAAF clarified that under *Hills* the use of evidence of charged conduct as Mil. R. Evid. 413 propensity evidence for other charged conduct in the same case is error, regardless of the forum, the number of victims, or whether the events are connected. *Id.* at 222. CAAF further reiterated: "Whether considered by members or a military judge, evidence of a charged and contested offense, of which an accused is presumed innocent, cannot be used as propensity evidence in support of a companion charged offense. *Id.* The CAAF stated that where such error exists, the Government must "prove there was no reasonable possibility that the error contributed to [the] verdict." *Id.*

### 2. Analysis

The Government urges this court to resolve this issue by finding Appellant waived this claim and, in the absence of waiver, argues that any error was

harmless beyond a reasonable doubt. We decline to find waiver but agree that the error was harmless beyond a reasonable doubt.

### a. Waiver

When an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). In determining whether waiver occurred, courts consider "whether the failure to raise the objection at the trial level constituted an intentional relinquishment of a known right." *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009). "A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law." *Id.* (quoting *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)). There is a presumption against the waiver of constitutional rights. *United States v. Elespuru*, 73 M.J. 326, 328 (C.A.A.F. 2014).

As of the date of Appellant's trial, the CAAF had not yet decided *Hills* and *Hukill*. Therefore, it cannot be said that the decision not to object to the instruction amounted to an intentional relinquishment of a known right. We decline to apply waiver under these circumstances.

### b. Harmless Error beyond a Reasonable Doubt

The Government contends the error in Appellant's case is harmless beyond a reasonable doubt as to both the assault consummated by a battery and abusive sexual contact convictions. We agree.

We first note that the military judge did not repeat the precise instructional error in *Hills* by informing the members that prior to considering whether Appellant had a propensity to commit this type of sexual offense they must first determine by a preponderance of the evidence that the other sexual offenses occurred. Instead the military judge, without specifying a burden of proof, instructed the members that "evidence that the accused committed the sexual offenses alleged in each of the specifications . . ., may be considered by you as evidence of the accused's propensity, if any, to commit the remaining sexual offenses." In contrast to *Hills*, the propensity instruction in this case did not "invite the members to bootstrap their ultimate determination of the accused's guilt with respect to one offense using the preponderance of the evidence burden of proof with respect to another." *Hills* at 357. This case did not include the "muddled accompanying instructions…creating a risk that that members would apply an impermissibly low standard of proof, undermining both the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted) (citation omitted).

Notwithstanding the absence of conflicting standards of proof, giving a propensity instruction based on evidence of other charged sexual offenses was still

error. We test for prejudice under the standard of harmlessness beyond a reasonable doubt. In doing so, we consider senior trial counsel's closing argument, the permissible non-propensity purposes of the sexual offenses evidence, and the strength of the Government's case.

On the primary disputed issue of specific intent, senior trial counsel made the following arguments:

> [W]e're going to go through all the circumstances of what you're looking for to see if he could form that specific intent, or he barely could; to see whether he could form that specific intent; and see whether he did form that specific intent. And what I will urge you to look at right off the bat is where he was grabbing; targeting women; targeting a thigh; targeting a buttocks; targeting a breast. Specific intent to gratify sexual desire.

> He's only touching women suggestively. So when we talk about sexual desire, gratify his sexual desire, he's not touching men suggestively. He's touching women suggestively, and you're looking again at where he was touching them; the parts of the body that he was touching them. That is an indication that he was gratifying his sexual desire. That was his intent; was to gratify his sexual desire. Why else would those body parts -- if he was trying to like, say, get [A1C GP's] attention, he comes up and grabs her on the butt, but he's just trying to get her attention. Why is he doing that instead of, like, tapping her on the shoulder or like grabbing her arm? Touching her thigh. Why is he doing that instead of, you know, touching her shoulder or arm? It's because it's related to his gratification of his sexual desire. That's why. And that's the same for the other women.

These arguments were not an invitation to the factfinder to rely on propensity. Instead, these arguments were an appeal to use the already admitted evidence of sexual offenses for the limited non-propensity purposes of establishing intent or absence of mistake as the military judge had instructed in accordance with Mil. R. Evid. 404(b). We do not read *Hills* or *Hukill* to proscribe such an instruction or use of the evidence.

Senior trial counsel briefly addressed the propensity instruction as follows:

> Let's talk about a few other -- just a couple other instructions that you're going to find, and the instructions are pretty lengthy. So I want to point these out in particular to you. With respect to propensity -- sexual assault propensity. Evidence that the accused committed the sexual offenses in each of the specifications of the charge, this applies to every specification, 1 through 5.

> Evidence that the accused committed the sexual offenses alleged in each of the specifications may be considered by you as evidence of the accused's propensity, if any, to commit the remaining sexual offenses in the specifications of the charge. That means if you find that he did commit any of these sexual offenses, you can think about whether he's the type of person who will commit sexual offenses, and you can use that as you consider the rest of the offenses. If somebody is the type of person, has the propensity to commit sexual assault, perhaps he has the propensity to commit sexual assault on other occasions. Perhaps he will commit sexual assault on other occasions. That is what propensity means.

Rather than argue or request the members rely on propensity in order to find Appellant guilty of any particular offense, senior trial counsel merely provided the members an explanation of what propensity means and that they could consider it. The focus of the argument was on the non-propensity uses of the evidence.

By comparison, trial defense counsel in his closing argument framed the issues regarding the abusive sexual contact specifications as follows:

> Let's speak about Specifications 2 through 5. That's the abusive sexual contact. Once with Sergeant [JC], twice with Airman [GP] and once with Airman [RJ] at the party. The defense does not, could not dispute the elements of touching or the element of consent. Touching, the evidence has been out there from the alleged victims that they were touched. The consent, they all testified they didn't give him consent. What else happened? Sergeant Rice acknowledged that he wouldn't expect them to. What's the other element? The last element. There was to be specific intent on the part of Sergeant Rice that he did these things to sexually gratify himself. He made these touchings, in Specifications 2 through 5, to sexually gratify himself. You have to use your life experiences, your common sense, to understand what sexual gratification might be. Is this sexual gratification? Even without the intoxication. But read the instructions for voluntary intoxication. Even if Sergeant Rice drank enough of that third drink cause he hadn't eaten or something hit him, even though he had something to eat and then he just starting piling [sic] it on. And some people didn't see it. Some people may have seen it and testified. Somehow, he gets very intoxicated. The expert, Doctor [M], has told you it's a possibility that he can't form that specific

intent. It's in the voluntary intoxication instruction. It's a possibility that he didn't have that specific intent to do what he did to sexually gratify himself. It's a real possibility. That's the element.

By not disputing that Appellant touched his victims on the buttocks, thigh, and breast without their consent as alleged, trial defense counsel implicitly acknowledged the strength of the Government's case. As detailed above, the Government's evidence as to each of the alleged nonconsensual touchings was strong. Trial defense counsel also effectively framed the issue for the members as to whether the evidence established beyond a reasonable doubt that Appellant had the intent to gratify his sexual desire for each of the specifications. To demonstrate that the Government had not met its burden, trial defense counsel argued that Appellant's slurred speech and aberrant behavior the night of the holiday party was evidence of his level of intoxication. Whether due to the voluntary consumption of alcohol or an involuntary ingestion, he was incapable of forming the specific intent to gratify his sexual desire. On this very point and in accordance with the military judge's limiting instruction, the members could properly consider evidence of all of the charged abusive sexual contact offenses that Appellant (1) pulled up SrA RJ's dress and in the process touched her buttocks; (2) touched A1C GPs buttocks and thigh; and (3) touched MSgt JC's breast to determine whether any or all of those acts were done with the intent to gratify his sexual desire. In other words, Appellant made intent the determinative issue for the abusive sexual contact specifications, and the military judge provided the members a proper non-propensity instruction on how all of the evidence for the abusive sexual contact offenses could be considered on the issue of Appellant's intent to gratify his sexual desire.

Under the particular circumstances of this case, where (1) the military judge did not provide a propensity instruction with conflicting standards of proof, (2) senior trial counsel only briefly mentioned propensity, (3) the Defense conceded the non-consensual touchings occurred, and (4) the military judge instructed on and senior trial counsel argued limited non-propensity uses of the abusive sexual contact offenses evidence, we are satisfied beyond a reasonable doubt that the military judge's Mil. R. Evid. 413 instruction did not contribute to the verdict.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.[9] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court

---

[9] We note the court-martial order (CMO) does not include "DNA Processing Required. 10 U.S.C. § 1565" language. We direct the publication of a corrected CMO to remedy this omission.